(May 27, 1909.)

## ROBERT LANSDON, Appellant, v. WASHINGTON COUNTY, Respondent.

[102 Pac. 344.]

SHERIFF—APPOINTIVE POWER—GUARDS NECESSARY IN EXECUTING PROCESS—LIABILITY OF COUNTY.

1. Sec. 8538, Rev. Codes, which authorizes the sheriff, when necessary, with the assent in writing of the probate judge, or in a city, of the mayor, to employ a temporary guard for the protection of the county jail, or for the safekeeping of the prisoners, the expense of which is a county charge, has reference to temporary and emergency cases where it is necessary to employ such assistants or guards for the immediate protection of the jail or the safekeeping of the prisoners therein, such as where assaults are made upon the county jail or efforts are made to release prisoners therefrom, or a riot or outbreak occurs in the jail, or in case of fire or an epidemic.

2. This section has no application to cases where it is necessary for the sheriff to employ assistants to aid in the execution of the processes of law.

3. Where the sheriff of a county receives a warrant for arrest and makes such arrest, but because of the illness and physical condition of the prisoner and the fact that such prisoner is a woman, and no provision is made in the county jail whereby such prisoner in her condition can be cared for, the sheriff may appoint guards to guard such prisoner until her condition is such that she may be confined in the jail.

4. A sheriff of a county has not only the authority expressly given him by statute, but also such implied authority as is necessary to efficiently execute the express authority given.

5. A sheriff having the express authority under a warrant to arrest a person charged with crime has also the implied authority to call to his assistance such aid as is necessary to efficiently execute the express authority given him to arrest, and the expense so incurred becomes a public charge.

6. This implied authority, however, cannot be extended into general authority so as to authorize the employment of regular or permanent deputies. It is possessed by the sheriff only in emergency cases, when necessary in executing the process of the law.

7. Where a county has made no provision for a woman's ward in the county jail, and a woman charged with crime is arrested, and at the time of such arrest such prisoner is confined in a hospital and so ill that it would be dangerous and serious to remove such prisoner from such hospital, and the sheriff appoints guards to look after such prisoner during the time she is confined in such hospital, and such appointment is made because the services of the sheriff, and the deputy allowed him by the board of county commissioners, are required for the general duties of the office, in such case such expense becomes a county charge, and in an action by the sheriff he may recover the same from the county.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for Washington County. Hon. Edward L. Bryan, Judge.

An action by the sheriff to recover money expended in payment of guards to guard a prisoner while under arrest. Defendant demurred. Demurrer sustained and judgment of dismissal entered. Plaintiff appeals. *Reversed.*

Ed. R. Coulter, and Edwin Snow, for Appellant.

"Public officers have not only the powers expressly conferred upon them by law, but they also possess by necessary implication such powers as are requisite to enable them to discharge the official duties devolved upon them." (23 Am. & Eng. Ency. Law, 2d ed., 364; *Lewis v. Colgan,* 115 Cal. 529, 47 Pac. 357; *Harris v. Gibbins,* 114 Cal. 418, 46 Pac. 292.)

"Where the county refuses to pay the salary of the necessary persons employed by the sheriff to guard his prisoners, the sheriff may pay them, and recover the amount from the county as money paid for the benefit of the county." (*Lloyd v. Silver Bow County,* 15 Mont. 433, 39 Pac. 457; *Gage County v. Kyd,* 38 Neb. 164, 56 N. W. 964.)

"If an extra guard is necessary to keep a prisoner safely, it is the duty of the sheriff to furnish such, and of the county to pay the necessary expense." (*City of Baltimore v. Howard County Commrs.*, 61 Md. 326; *La Salle County v. Milligan,* 143 Ill. 321, 32 N. E. 196; *In re Boyce,* 43 Misc. Rep. 297, 88 N. Y. Supp. 841; *Dakota County v. Eastcott* (Neb.), 93 N. W. 679.)

J. L. Richards, Prosecuting Attorney of Washington County, for Respondent, files no brief.

STEWART, J.—The appellant brought this action against Washington county to recover the sum of $120, money alleged to have been expended by plaintiff as sheriff of said county in payment for service, rendered by two guards appointed by the appellant to take charge of a prisoner after arrest, who was held and unable to be confined in the county jail of said county. The plaintiff alleged in his complaint in substance as follows:

That between the second Monday in January, 1905, and the second Monday of January, 1907, he was the duly elected, qualified and acting sheriff of Washington county; that on December 17, 1906, there was placed in his hands for execution a warrant issued by the probate judge of said county, commanding him to arrest one Nellie Griffith on the charge of the crime of murder; that on said day, and under and by virtue of said warrant, plaintiff, as such sheriff, arrested and took into custody said Nellie Griffith; that at the time said arrest was made said Nellie Griffith was lying ill in a critical condition in a hospital in said county, suffering from a gunshot wound, and that plaintiff was advised by competent physicians that it would be impossible and dangerous to remove said prisoner from said hospital without endangering her life; that upon said day, and between that and the sixth day of January following, the jail of said county was damp, illy ventilated, without any conveniences or means for caring for or doctoring sick prisoners, and was without any sick-bed or hospital and without any woman's ward; and

that during all of said time there were confined in said jail divers male prisoners; that it was impossible to properly care for and administer to said Nellie Griffith in said county jail; that between December 17, 1906, and the sixth day of January, the sheriff's office in said county was being conducted by the plaintiff and one deputy, and that such deputy was the only deputy employed in said office, and that the entire time and attention of both plaintiff and said deputy were necessary and required for the proper management of the ordinary affairs and business of the sheriff's office; that it was impossible for either this plaintiff or his deputy to guard or look after said Nellie Griffith; that in order to perform the duties imposed upon him relative to the safe-keeping and guarding of said prisoner, it was necessary for plaintiff as such sheriff to employ the services of two competent persons to guard and look after said prisoner during the time she was an inmate of said hospital, and that the plaintiff made application to the probate judge of said county for a written order authorizing and directing said plaintiff, as such sheriff, to employ the services of two competent persons to guard said Nellie Griffith during the time she was confined in said hospital and until such time when it would be safe to remove her from said hospital to the jail of said county; that the probate judge orally authorized and directed the plaintiff to employ such guards, but failed to give a written order therefor, stating at the time that a written order was unnecessary; that plaintiff relied upon the statements of said judge, and because it was impossible for plaintiff as sheriff to perform his duties as such, without the services of such guards, and because such services were necessary, he employed two qualified and competent persons to act as guards and to guard said prisoner at said hospital until she could be safely removed to the county jail, and agreed to pay such guards for their services the sum of $3 per day; that the guards qualified as such, entered upon their duties and served continuously between December 17, 1906, and January 6, 1907, upon which latter date said prisoner died in said hospital from the effects of said gunshot wound; that

during such time said two guards were constantly with such prisoner, each serving twelve hours during each day; that $3 per day was a reasonable sum to be allowed each of said guards; that the plaintiff was compelled to and did pay each of said guards the sum of $60 for such services; that the plaintiff filed with the clerk of the board of county commissioners of said county his claim for said $120 paid out as aforesaid, verified in the manner required by law, and accompanied the same with the receipts of said two guards for the sum of $60 each; that the same was disallowed by the board of county commissioners; that the same has not been paid and there is now due and owing the plaintiff said sum.

To this complaint the county filed a general demurrer, which was sustained by the trial court. The plaintiff declining to plead further, the cause was dismissed and judgment rendered in favor of the county for costs. This appeal is from the judgment.

Upon the argument of the appeal in this court it was stated by counsel that the trial court sustained the demurrer to the complaint upon the ground that at the time such guards were employed the said sheriff did not have the written assent of the probate judge or the mayor of any city to employ the same. This contention is based upn the provisions of sec. 8538 of the Rev. Codes of this state. This section reads as follows:

"The sheriff, when necessary, may, with the assent in writing of the probate judge, or in a city, of the mayor thereof, employ a temporary guard for the protection of the county jail or for the safekeeping of the prisoners, the expenses of which are a county charge."

It would appear from the allegations of the complaint that the plaintiff also had in mind this section when the complaint was drawn, for it is therein alleged that application was made to the probate judge for permission to employ such guards, and that the probate judge gave his oral consent and stated to the sheriff that written consent was not necessary. An examination of this section, however, would seem to clearly indicate that its provisions are intended to apply to emergency cases where assistance is necessary to

protect the county jail or the safekeeping of prisoners. This section, no doubt, was intended to confer power upon the probate judge or mayor of a city to authorize the sheriff to employ guards and call to his assistance aid when there might be threatened or actual injury or destruction to the county jail or the prisoners confined therein, such as an outbreak among prisoners in the jail or an assault made upon the jail from the outside, or in case of fire or an epidemic, but was not intended to apply to cases where it becomes necessary for the sheriff to have assistants in order that he may execute the processes of the law and arrest, take, or deliver prisoners as commanded by the law. The language of this section clearly indicates that it was intended to apply to emergency cases such as assaults upon the county jail or efforts made to release prisoners, a riot, fire, epidemic, or something of that sort, when assistance is necessary immediately and can be more readily authorized, if not by the judge, then by the mayor.

If, therefore, this section was intended to apply to cases where immediate assistance is necessary in order to protect the jail or the safekeeping of the prisoners therein, then such section would have no application to the facts under consideration in this case, and would not govern or determine the right of the sheriff to incur the expense for which this action is brought.

The question then arises: Can the sheriff, when the necessity arises, appoint guards and employ assistants to aid him in performing the duties of his office, and will the expenses incurred thereby become a county charge?

. Sec. 6, art. 18 of the constitution of this state, provides:

"The sheriff, .... shall be empowered by the county commissioners to appoint such deputies and clerical assistants as the business of their offices may require, said deputies and clerical assistants to receive such compensation as may be fixed by the county commissioners."

To carry out the provisions of this section of the constitution, the legislature in 1899 (Rev. Codes, sec. 2119) enacted a law, which provides that the sheriff shall be empowered by the board of county commissioners to appoint deputies to do

the business of the office, and requiring the sheriff to give notice by publication of the application for such authority, and giving any taxpayer the right to appear and protest thereto. This latter section is the only provision we have been able to find in our statute which covers the subject of appointing deputy sheriffs, and this section was intended to authorize the appointment of deputies sufficient to do the ordinary business of the office. The deputies thus provided for are the ordinary and general deputies, and such as will be required to discharge the ordinary and usual duties of the office.

This section, however, has no reference to emergency cases, and necessarily so, because of its provisions. Sec. 2024, Rev. Codes, in prescribing the duties of the sheriff, makes it his duty to "serve all processes and notices in the manner prescribed by law"; and sec. 2023 defines process as used in the code to include "all writs, warrants, summons and orders of courts of justice or judicial officers."

Under the facts alleged in this case, therefore, it was the duty of the sheriff, upon receiving the warrant placed in his hands, to arrest and take before a magistrate for examination the party named therein. From the allegations in the complaint it appears he made the arrest in accordance with the statute; but he was unable to take the prisoner before a magistrate or to remove her to the county jail by reason of her physical condition, and by reason of the fact that the county had not provided a suitable place in the jail where her condition could be properly cared for. In executing the process of the court it was necessary that the sheriff appoint and provide guards to look after such prisoner. A deputy could not be secured to perform this duty in the method pointed out by Rev. Codes, sec. 2119, because of want of time. Unless guards were provided, the officer would be unable to execute the process; he would be unable to perform the duties required of him by law.

Under such circumstances, in addition to the general authority expressly given by the statute to the sheriff, he is also by implication given such additional authority as is necessary to carry out and perform the duties imposed upon

him by law and required for the due and efficient exercise of the duties of his office. In other words, the express authority given to the officer by statute carries with it by implication such additional authority as is necessary to efficiently execute the express authority given. If the officer does not have this authority, many instances may arise and can readily be called to mind where it would be impossible for the officer to give due execution to the law.

The sheriff's office is generally looked upon as the office to keep and preserve the peace, and to prevent and apprehend violators of the law, and without the implied power the duties imposed by law would often be duties merely in name without the power to execute. As an illustration, we need only mention the case under consideration. Here was a prisoner apprehended, fatally wounded (as it afterward proved), and to remove her from the hospital where confined might have resulted in immediate serious consequences. Unless the officer had the authority to appoint guards to look after her, the general duties of the office of the sheriff would have been practically suspended, because to guard such prisoner necessarily required a relief during a portion of the time, and this would have necessitated the services both of the sheriff and his deputy; and under such circumstances no one would have been left to discharge the general duties of the office. A sheriff is called upon to arrest a party charged with crime a long distance from the county seat where he is to be confined, and in order to deliver such prisoner to the place of confinement it becomes necessary, because of his character or the time required, that the sheriff have assistants. If he cannot legally call to his aid assistants under such circumstances, the effect would be practically to withdraw from the sheriff's office the express authority granted to the sheriff by the statute. Under such circumstances, and when the necessity clearly appears, we are satisfied that the sheriff has the implied authority to select necessary assistants or to appoint guards to look after a prisoner when the emergency arises in executing the law.

In the case of *Lewis v. Colgan,* 115 Cal. 529, 47 Pac. 357, the supreme court of California had under consideration a question similar to that presented in this case, and in that opinion the court quotes with approval Throop Pub. Off., sec. 542, as follows:

"The rule respecting such powers is that, in addition to the powers expressly given by statute to an officer or a board of officers, he or it has, by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the powers."

In 23 Am. & Eng. Ency. of Law, page 364, the author announces the rule as follows:

"Public officers have not only the powers expressly conferred upon them by law, but they also possess by necessary implication such powers as are requisite to enable them to discharge the official duties devolved upon them."

If this rule be correct, then it follows that it being the duty and within the authority of a sheriff to arrest and detain a prisoner, and in the discharge of which it is necessary to call to his assistance aid, then by implication the officer has the authority to do so. If the officer has such authority, then the expense thus incurred becomes a county charge.

We think the facts alleged in the complaint in this case are sufficient to show the necessity for the sheriff making the appointment, and that the county is liable for the necessary expense thus incurred.

Counsel for the county argues that if the sheriff has such authority, he can ignore the general provisions of the statute as to appointing deputies, and whenever he thinks it necessary to appoint a deputy he may do so, and that the county would be liable, and unnecessary expense would thus be incurred and the county very much burdened. This contention, however, overlooks the fact that before the sheriff can appoint assistants the necessity must exist; and in order for him to recover the money thus expended from the county he must show the necessity, and in addition thereto the reasonableness of the charge made. If the facts showing the necessity be not true, then the county can by answer

put such facts in issue and defend upon the ground that the necessity did not exist. If the amount claimed by the officer is unreasonable, then the reasonableness of such charge may be put in issue and the county can defend upon that ground; but in the present case we are satisfied that the facts alleged are sufficient to constitute a cause of action; that they show the necessity and the liability of the county, and if they are proven as alleged, that the plaintiff would be entitled to recover the amount sued for.

This implied authority, however, cannot be extended into general authority to appoint and provide regular and permanent deputies. It is possessed by the sheriff only in emergency cases, when necessary in executing process. It is not given him in the general administration of his office, · because the aid necessary in such cases is committed to the judgment of the board of county commissioners and the district judge when court is in session. But where it appears that in order to execute process placed in the hands of an officer, it is necessary that he call to his aid proper assistants, the implied power exists which authorizes the same, and the expense thereby created becomes a public charge. Whether the facts alleged in the complaint in this case be true or not can only be determined upon the trial; but if true, the plaintiff is entitled to recover.

The judgment is *reversed* and the trial court directed to overrule the demurrer. Costs awarded to *appellant.*

Sullivan, C. J., and Ailshie, J., concur.