"Weygandt, O. J.
 

 The one question of law here presented for determination is whether the somewhat involved record discloses evidence of employment of the plaintiff by the village of Independence for service as a ‘ ‘ deputy patrolman
 

 The plaintiff contends that he was under an “appointment or contract of hire” within the following provisions of Section 1465-61, General Code (110 Ohio Laws, 224):
 

 “The terms ‘employe’, ‘workman’ and ‘operative’ as used in this act, shall be construed to mean:
 

 “1. Every person in the service of the state, or of any county, city, township, incorporated village or school district therein, including regular members of lawfully constituted police and fire departments of cities and villages, under any appointment or contract of hire, express or implied, oral or written, except any official of the state, or of any county, city, township, incorporated village or school district therein. * * *”
 

 According to the plaintiff’s evidence he was not a resident of the village of Independence, but was regularly employed there during the day as an automobile mechanic in a garage. However, on several occasions at night the village “traffic patrolman” asked the plaintiff to accompany him in the performance of his official duties. Over a period of approximately two months this occurred “around six or ten times.” On the first of these the plaintiff was “sworn in as special deputy” by the traffic patrolman who gave him a badge and gun, and told him he would receive seventy-five
 
 *547
 
 cents per hour whenever called upon to serve. However, no money was ever paid to him. On the night plaintiff was injured he reported for duty at about 9:30, and until about 2:00 a. m. he and the traffic patrolman drove about together through the village. At this hour they left their car and started to walk down one of the streets. Soon they heard a sound that they thought was made by thieves breaking into a chicken house. They immediately made an investigation, but found no one. Then as they started to leave the premises the owner mistook them for thieves, and shot and injured both of them.
 

 The defendant claims that the plaintiff was not employed by the village because the traffic patrolman had no authority to appoint him to such a position. The plaintiff’s answer to this is that such authority had been conferred upon the traffic patrolman by the village mayor and also by the council.
 

 This phase of the controversy is definitely settled by the following unambiguous provisions of Section 4384, General Code:
 

 “* * * "When provided for by council, and subject to its confirmation, the mayor shall appoint all deputy marshals, policemen, night watchmen and special policemen, and may remove them for cause, which shall be stated in writing to council.”
 

 Thus it is readily apparent that as a matter of law neither the traffic patrolman nor the mayor nor the council had authority to appoint the plaintiff. It is equally plain that this resided in the mayor and Council acting in concert, and that the traffic patrolman possessed no appointing power whatsoever.
 

 But it is insisted by the plaintiff that as a matter of fact some sort of informal but authoritative action had been taken whereby he became an employee of the village. One difficulty with this view is that the testimony of the plaintiff’s own witnesses is to the contrary.
 

 
 *548
 
 So far as the limited authority of the traffic patrolman is concerned, this is shown by the following excerpt offered in evidence by the plaintiff from the approved minutes of the council:
 

 “Mayor Wisnieski appointed Edward Wisnieski traffic patrolman for the balance of the year of 1930. Motion then made by Mr. Baumann that the appointment of Edward Wisnieski as traffic patrolman of the village of Independence for the balance of the year 1930 be confirmed, motion seconded by Mr. Blessing. Roll call. Yeas, Baumann, Doubler, Blessing. Nays, King, Staas. Motion carried. Appointment confirmed. Bond for $500.00 with Charles and William H. Sizler as sureties posted, and approved by mayor on May 27, 1930.”
 

 Then too, the following testimony of the mayor leaves nothing to inference:
 

 “47. Do you know whether or not council ever passed a resolution authorizing you, as mayor, to give your patrolman authority to deputize special officers? A. Never did that, that I know of.
 

 “48. When that was done you assumed it was done by the Ohio General Code? A. Yes. * * *
 

 “50. And Turek was never carried on the payroll of the village as a special officer, or as any other kind of employe? A. No, he was not. # * *
 

 “53. Now, on the occasion when Turek was shot, you didn’t appoint him that night? A. No, sir; I didn’t.
 

 “54. And council didn’t appoint him? A. They did not.”
 

 It is of course true that for some unexplained reason the mayor and the traffic patrolman were permitted to testify as to authority they
 
 thought
 
 they had, but no reason or authority is offered as to any possible theory of law upon which this testimony could be clothed with evidentiary value against the village.
 

 
 *549
 
 From the foregoing comments it is apparent that the plaintiff was not employed by the village. But nevertheless, he insists that even in snch event, he should be permitted to recover under favor of Section 12857, General Code, which reads as follows:
 

 “Whoever, when called upon by a sheriff, coroner, constable or other ministerial officer to assist in apprehending a person charged with, or convicted of, a criminal offense, or in securing such person when so apprehended, or in conveying him to prison, neglects or refuses so to do, shall be fined not more than fifty dollars.”
 

 The plaintiff cites several cases upon which he relies. However, a study of them clearly demonstrates the inapplicability of this statute to the situation in the instant case. Patently, this plaintiff was not summoned by the traffic patrolman “to assist in apprehending a person charged with, or convicted of, a criminal offense, or in securing such person when so apprehended, or in conveying him to prison.” No one had been convicted of, or even charged with, a crime. From this simple language it is evident that the statute was enacted for the purpose of enabling an officer to obtain immediate assistance when suddenly confronted with a dangerous emergency in apprehending, securing or conveying a person charged with, or convicted of, a crime. This traffic patrolman was in no such dire straits when at four o’clock in the afternoon he requested the plaintiff to accompany him that night. On the contrary, for four and one-half hours they patrolled the village streets in the usual manner, before they happened to have their attention attracted by a sound which they supposed was caused by chicken thieves.
 

 The foregoing views require a reversal of the judg
 
 *550
 
 ments of the lower courts, and also an entry of final judgment for the defendant.
 

 Judgments reversed.
 

 Stephenson, Williams, Jones, Matthias, Day and Zimmerman, JJ., concur.