128 P.2d 738

**EATON v. BERNALILLO COUNTY et al.**

No. 4669.

Supreme Court of New Mexico.

Aug. 20, 1942.

Scott H. Mabry, Asst. Dist. Atty., and Simms, Modrall & Seymour, all of Albuquerque, for appellants.

Joseph L. Smith, of Albuquerque, and James F. Warden, of Carlsbad, for appellee.

SADLER, Justice.

The plaintiff's husband died shortly after being struck by an automobile while directing traffic at the scene of the collision of two automobiles on east Central Avenue in the City of Albuquerque. The widowed plaintiff asks compensation from the County of Bernalillo by virtue of L. 1933, c. 178, § 2, N.M.Supplement, 1938, § 156-110, and from Mountain States Mutual Casualty Company, its insurer.

The right of recovery depends upon the status of plaintiff's husband, at the time of his death, as a "workman" or "employee" of Bernalillo County within the true meaning of those words as employed in our Workmen's Compensation Act. Comp.St.1929, § 156-101 et seq. The district court held he was such an employee, as the act contemplates and awarded com-

pensation. We are called upon to determine the correctness of that conclusion. The facts, either undisputed or resolved by findings not open to successful challenge, must be stated in order to test the correctness of the trial court's conclusion.

Bernalillo County is a political subdivision of the State of New Mexico and Ed Donohue is and at all material times was the sheriff of said county. He maintains a staff of four or five salaried deputies and issues a number of written commissions to special deputies who receive no salaries. On January 1, 1941, he issued such a commission to one David Kaufman, who on the date of decedent's death was a duly appointed, qualified and acting deputy sheriff of Bernalillo County serving without regular compensation.

On a number of occasions prior to February 22, 1941, date of decedent's death, the said Kaufman at the request of Sheriff Donohue had patrolled the highways of Bernalillo County for the purpose of apprehending violators of the law, disturbers of the peace and to enforce safety statutes for the protection of the traveling public.

Deputy Kaufman did such patrolling without thought or expectation of pay because of his interest in police work, and without having received any pay therefor except on one occasion when he was given gasoline expense money of $1.50 by a Justice of the Peace of Bernalillo County. The patrolling was done at night when he was off duty from his regular employ-

ment as automobile salesman. When upon patrol he traveled by automobile and carried peace officer's equipment consisting of a Bernalillo County deputy sheriff's badge, police whistle and pistol. His automobile was also equipped with a siren and spotlight. Frequently, he took some of his friends with him on these trips. The decedent Eaton had accompanied him on at least one such trip prior to the night of his death.

At the time in question, Kaufman was accompanied by the decedent Eaton and one Mike Blatnick. Neither Eaton nor Blatnick held commissions as deputy sheriffs of Bernalillo County. Eaton accompanied Kaufman at the latter's request. The three had been patrolling the streets of Albuquerque in Kaufman's car for some four or five hours when the accident resulting in Eaton's death occurred.

While cruising upon east Central Avenue in the City of Albuquerque, Kaufman's party came upon the scene of a collision between two automobiles which had resulted in severe damage to both automobiles and in the injury of some eight or ten persons occupying the same. The automobiles involved in the accident were so badly damaged they could not leave the scene of the accident under their own power and those injured in the collision required emergency medical treatment. The damaged automobiles were standing upon the highway in the face of approaching traffic.

It had been snowing and sleeting prior to the collision and it was raining and foggy at the time thereof. The roadway was wet, visibility poor and street illumination at the point of the accident was bad. A number of persons had gathered at the scene of the accident and a considerable volume of traffic was constantly passing the same.

Such was the situation when Kaufman and his party arrived on the scene. Kaufman, Eaton and Blatnick immediately left their car and assisted the injured persons, or as many as could be accommodated, into Kaufman's car. He began transporting them to St. Joseph's Hospital in Albuquerque for treatment. Just before leaving for the hospital with the first carload of injured persons, Kaufman handed his flashlight and police whistle to Eaton, the decedent, and asked him to direct traffic at the scene of the accident. In the meantime and within a few minutes after the accident, two squad cars with several uniformed city policemen arrived on the scene. One of the city officers remained there directing traffic, while the others later proceeded to the hospital. While thus directing traffic, Eaton was struck and injured by an automobile driven in a westerly direction on Central Avenue and died within a few minutes as a result of the injuries received.

At the time Eaton was struck, automobile wreckers had arrived on the scene and were engaged in removing the automo-

biles, loose parts and accessories from the street. The presence in the street of the wrecked automobiles and debris therefrom with motor traffic flowing by constituted a menace to the safety of motorists using the street and a like menace to workmen engaged in clearing away the wreckage. An emergency situation thus was created requiring the services of peace officers to direct traffic.

Under the facts found as just recited, the trial court concluded that at the time of his injury and death Eaton and the County of Bernalillo were subject to the provisions of the Workmen's Compensation Act of the State of New Mexico in that at such time he was a duly appointed, qualified and acting deputy sheriff of Bernalillo County, performing services arising out of and in the course of his employment as an employee of said county. The court awarded recovery of ten dollars per week for three hundred weeks, medical, hospital and funeral expenses, and attorney's fees, to review which award this appeal is prosecuted.

The evident theory upon which the trial court made the award under the facts found is reflected by a written opinion filed in the cause in which, among other things, the court said:

"Now, the question arises, the ultimate fact that the Court has to decide, whether or not, from the facts and circumstances developed by the evidence and by the statements of all the parties, or so much as relevant and admitted by the Court in evidence and other facts and evidence in this case, the deceased, Eaton, was acting as a peace officer in an emergency. Of course it is plain from the evidence that the Deputy Sheriff, Kaufman, did not, in words, state to the deceased that he deputize(d) him as a Deputy Sheriff, and it is not evident from any statement of the Deputy Sheriff that he directed him (Eaton) to divert traffic at the scene of the accident.

"So it is from circumstantial evidence, circumstances and facts that occurred at the scene of the accident, that the claimant herein relies for judgment under the Workmen's Compensation Act.

"I am frank to say to counsel that I was dubious about the matter as this testimony was coming in, and I am not basing my ultimate conclusions upon any particular statement of any particular witness, but as a whole, taking the evidence as a whole as the situation happened, the Court is constrained to hold, in my judgment, from all of these circumstances, that the deceased was acting as a peace officer in an emergency. The Court is frank to state, and wants it in the record, that the circumstances as developed may present a question, but the Court, from the entire testimony as a whole and from all of the surrounding circumstances, the position of the parties and circumstances into which they were thrown at the time of the accident, and what happened thereafter, and the position of the parties immediately after the Deputy Sheriff, Kaufman, and the

others arrived at the scene of the accident, their actions, what they did, the actions of the City police and the ultimate facts, the Court will find that the emergency had not ended in so far as that accident was concerned, and the Court is constrained to hold that the deceased was acting as a peace officer in an emergency, and that his widow is entitled to compensation under this complaint.

"The Court wants to make a further observation that the Court feels that this emergency under present day conditions of accidents on highways, or the emergency of an accident on a main highway such as Central Avenue at such a time as this when there was considerable traffic, *is just as much an emergency as if an assault were being perpetrated.*" (Emphasis ours.)

In other words, the trial court analogizes the emergent situation existing at the time to that contemplated by 1929 Comp., § 35-2707, making it a misdemeanor for any person called upon in the name of the United States or of the State of New Mexico by any sheriff, deputy sheriff or constable to neglect or refuse to assist them in the execution of their office in any criminal case, or in the preservation of the peace or in apprehending or securing of any person for the breach of the peace, or in the escape or rescue of persons arrested upon civil process. The analogy thus drawn is relied upon by the court to place authority in special deputy sheriff Kaufman to commandeer the services of Eaton and thereby to constitute the latter for the duration of the emergency a deputy sheriff of Bernalillo County.

That our appraisal of the trial court's theory is a fair one and coincides with that of appellee's counsel is demonstrated by the following language taken from the opening pages of their brief, to-wit: "Briefly Appellee contends that the evidence shows that David Kaufman, a formally appointed, permanent and acting deputy sheriff of Bernalillo County, commandeered the service of Cecil Eaton to meet an emergency; that this clothed Eaton with the powers and with the protection of law accorded to a deputy sheriff; that as a result Eaton became a deputy sheriff and employee of the County; that Eaton, while acting as such deputy sheriff and employee in the emergency, suffered accidental injuries which resulted in his death; and that such death is compensable."

1929 Comp., § 156-112(i), being L.1929, c. 113, § 12(i), defines the word "workman", as employed in the Workmen's Compensation Act, as follows: "(i) 'Workman' means any person who has entered into the employment of or works under contract of service or apprenticeship, with an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business. The term 'workman' shall include 'employee' and shall include the singular and plural of both sex."

L.1933, c. 178, § 2, 1938 New Mexico Supplement, § 156-110, amending 1929

Comp., § 156-110, extends the provisions of the Workmen's Compensation Act to peace officers of the state, counties and municipalities in the following language, to-wit: "All duly elected or appointed peace officers of the state, counties or municipalities, and the warden and all guards employed at the state penitentiary shall be deemed to be following extra hazardous occupations and to be within the provisions of this act."

In order to secure a reversal of the judgment against them, the appellants present, in effect, the following syllogism:

1. The relationship of employer and employee is indispensible to recovery under the act invoked.

2. The decedent was not an employee.

3. Accordingly, the decedent's death is not compensable.

If the major premise and the minor premise be correct, the conclusion drawn cannot be escaped. Counsel for appellee do not challenge the correctness of the major premise. They admit it is true. They assail vigorously, however, the correctness of the minor premise and, hence, the soundness of the conclusion drawn by the appellants.

We, then, immediately are concerned with a determination of decedent's status at the time of his injury. Was he an employee of Bernalillo County and, if so, how and when did he become such? Admittedly, the essential relationship did not exist when he drove away from his home in deputy Kaufman's car some four or five hours preceding his injury. If, for instance, at any time prior to arriving at the place of his fatal injury, either he or his other companion, Blatnick, had been injured while placing a spare tire on Kaufman's automobile, even at the latter's request, or in rendering like assistance to another motorist in distress and likewise at Kaufman's request, it would indeed be a bold claim to assert relief from such injury against Bernalillo County under the Workmen's Compensation Act. And so, to support recovery the appellee's counsel are compelled to assert in deputy Kaufman authority arising out of the exigent situation confronting him upon arrival at the scene of the wrecked automobiles to make of Eaton a deputy sheriff and, hence, an employee of Bernalillo County.

The cases chiefly relied upon by appellee's counsel to support this theory of recovery are County of Monterey v. Rader, 199 Cal. 221, 248 P. 912, 47 A.L.R. 359; Tomlinson v. Town of Norwood, 208 N.C. 716, 182 S.E. 659; Mitchell v. Industrial Commission of Ohio, 57 Ohio App. 319, 13 N.E.2d 736; Millard County v. Industrial Commission, 62 Utah 46, 217 P. 974; Village of West Salem v. Industrial Commission of Wisconsin, 162 Wis. 57, 155 N.W. 929, L.R.A.1918C, 1077; Vilas County v. Monk, 200 Wis. 451, 228 N.W. 591. These decisions afford convincing authority in support of appellee's position if it truly can be said the facts of the present case bring it within the scope of such decisions. They clearly hold that a private citizen

impressed into service in aid of peace officers to meet and cope with riots, unlawful assemblies and certain other dangerous situations, may claim benefits under workmen's compensation acts with provisions similar to ours, if in the course of rendering such assistance injury or death shall ensue. The power of the peace officer to invoke the aid of the citizen is related to the common law posse comitatus. When so called, even without formal language of deputation, the citizen nevertheless is deemed deputized for the duration of the emergency and thus arises his status as an employee of the county or municipality involved, so essential to recovery under workmen's compensation acts.

In order, however, to bring a case within these decisions, the claimant first must disclose a state of facts fairly establishing that at the time of his injury the person injured was acting under the compulsion of a peace officer's call for assistance in enforcing gravely threatened breaches of the criminal laws of the state or some municipality. This invites consideration of the grounds upon which the sheriff may call to his aid the posse comitatus and, then, the further inquiry whether those grounds appear in the case at bar.

Ordinarily, the power of the sheriff to appoint deputies is controlled by statutory enactments touching the subject. See 1929 Comp., § 33-4411, authorizing sheriffs of the various counties to appoint deputies who shall remain in office during the pleasure of such sheriffs. Section 33-4412 prohibits the sheriff of a county, mayor of a city, or other person authorized by law to appoint special deputy sheriffs, special constables, or other peace officers to preserve the public peace and to prevent and quell public disturbances, from appointing any person not a citizen of the state of New Mexico and prohibits any such special deputy or other special peace officer from assuming or exercising any of the functions and duties of the office without first having received his appointment in writing from the lawfully constituted authorities of the state of New Mexico. The concluding paragraph of this section denies it application in times of riot or unusual disturbance when declared to exist by proclamation of the Governor.

1929 Comp., § 33-4414, requires the sheriff to file notice in the office of the county clerk of his county and in the office of the clerk of the district court of such county of the appointment of any regular or permanent deputy sheriff and requires each such deputy to file his oath of office in the office of the county clerk. This section also authorizes any sheriff to appoint respectable and orderly persons as special deputies to serve any particular order, writ or process, or when in the sheriff's opinion the appointment of special deputies is necessary for the purpose of preserving the peace. As to special deputies it is not necessary to give or file any notice of the appointment. And, it is provided that there shall be no additional fee or per diem paid by the counties for any additional deputies other than as provided by law.

Section 33-4415 provides that deputy sheriffs are authorized to discharge all the duties which belong to the office of the sheriff, that may be placed under their charge by their principals with the same effect as though they were executed by the respective sheriffs.

Section 35-2707 reads as follows: "If any person being required in the name of the United States, or of the state of New Mexico, by any sheriff, deputy sheriff or constable, shall neglect or refuse to assist them in the execution of their office, in any criminal case, or in the preservation of the peace, or in apprehending or securing of any person for the breach of the peace, or in the escape or rescue of persons arrested upon civil process, he shall be punished by fine not exceeding one hundred dollars."

 We find no statutory provision giving the sheriff or his deputies affirmative authority to make the call for assistance whose refusal this section penalizes. However, such authority exists in the sheriffs of this state by virtue of our adoption of the common law. § 35-2707, just quoted, seems to be merely declaratory of the common law making it an indictable offense to refuse the sheriff's call for aid of the posse comitatus; in other words, such a number of men of the county above the age of fifteen as were necessary for his assistance in the execution of the king's writs, quelling of riots, apprehending traitors, robbers, etc. Hooker v. Smith, 19 Vt. 151, 47 Am.Dec. 679; Robinson v. State, 93 Ga. 77, 18 S.E. 1018, 44 Am.St.Rep. 127 and note. See, also, 57 C.J. 773, § 123, under title "Sheriffs and Constables"; 24 R. C.L. 923.

This power of the sheriff, or his deputy, to summon aid in a proper case, in enforcing the criminal laws, is not open to question. It is of ancient origin and in the early days of our country's growth often was exercised. More recently, with the organization in almost every state of statewide police agencies and the development in each county of the various states of a larger and better integrated sheriff's force, the occasion for resorting to the posse comitatus has diminished greatly. Nevertheless, the power is there. The sheriff may make the call and the citizen will ignore it at his peril. In each of the cases relied upon by appellee and cited, supra, the court was presented with facts affording justification to the sheriff, or his deputy, in impressing the service of a bystander in arresting, securing or conveying some dangerous character suspected of or charged with a violation of the criminal laws. Under such circumstances, it was logical to hold that the person injured while so assisting occupied the status of a deputy sheriff, and, hence, of an employee, thereby entitling him or his dependents, to compensation.

 Not so, here. The facts disclose no situation warranting a call to the posse comitatus nor even suggesting that any such call was made. And, in the only two cases brought to our attention whose facts approach in similarity those of the case at

bar, the court in each declined to invest the sheriff with grounds for summoning the posse comitatus additional to those existing at common law or found in statutes largely declaratory thereof. Accordingly, compensation was denied for want of an employer-employee relationship. Industrial Commission of Ohio v. Turek, 129 Ohio St. 545, 196 N.E. 382; City of Long Beach v. Industrial Accident Commission, 4 Cal.2d 624, 51 P.2d 1089.

In the Turek case [129 Ohio St. 545, 196 N.E. 384], after failing to establish express or formal employment as a deputy, the claimant endeavored, as in the case at bar, to sustain recovery on the theory that the injured person was impressed into service by the marshal's call for assistance as under the posse comitatus. The Supreme Court of Ohio rejected the theory in language which brings out clearly the distinction existing between the cases relied upon by appellee and the case at bar, to-wit:

"From the foregoing comments it is apparent that the plaintiff was not employed by the village. But, nevertheless, he insists that even in such event he should be permitted to recover under favor of section 12857, General Code, which reads as follows:

" 'Whoever, when called upon by a sheriff, coroner, constable or other ministerial officer to assist in apprehending a person charged with, or convicted of, a criminal offense, or in securing such person when so apprehended, or in· conveying him to prison, neglects or refuses so to do, shall be fined not more than fifty dollars.'

"The plaintiff cites several cases upon which he relies. However, a study of them clearly demonstrates the inapplicability of this statute to the situation in the instant case. Patently, this plaintiff was not summoned by the traffic patrolman 'to assist in apprehending a person charged with, or convicted of, a criminal offense, or in securing such person when so apprehended, or in conveying him to prison.' No one had been convicted of, or even charged with, a crime. *From this simple language it is evident that the statute was enacted for the purpose of enabling an officer to obtain immediate assistance when suddenly confronted with a dangerous emergency in apprehending, securing, or conveying a person charged with, or convicted of, a crime.* This traffic patrolman was in no such dire straits when at 4 o'clock in the afternoon he requested the plaintiff to accompany him that night. On the contrary, for 4½ hours they patrolled the village streets in the usual manner, before they happened to have their attention attracted by a sound which they supposed was caused by chicken thieves.

"The foregoing views require a reversal of the judgments of the lower courts, and also an entry of final judgment for the defendant." (Emphasis ours.)

In the later case of Mitchell v. Industrial Commission of Ohio, 57 Ohio App. 319, 13 N.E.2d 736, 739, where an award of workman's compensation was sustained upon

the theory that a situation existed warranting the sheriff in calling assistance to his aid, the Ohio Appellate Court noticed the Turek case, expressly approving but distinguishing it in the following language, to-wit: "To our notion the Turek case, supra, is sound in logic and in its conclusion. By reason of the dissimilarity of its facts with those of this case it is not authority for a reversal of this cause."

Similarly, the Supreme Court of California in City of Long Beach v. Industrial Accident Commission, supra, in which the claim for workmen's compensation was denied, differentiated the earlier case of County of Monterey v. Rader, 199 Cal. 221, 248 P. 912, relied upon by appellee in this case and held that claimant was not an employee of the City of Long Beach at the time of receiving the injuries for which he sought compensation. Among other things, the court said [4 Cal.2d 624, 51 P.2d 1091]:

"It is very clear from the record that there was no deputization by the local peace officers, or any occasion to do so. The fact that the officer asked him to keep his eye upon the men and the automobile while he went to the telephone was not an extraordinary request and is one that an officer may have properly made of any citizen who happened to be near by. * * *

"We are not able to find a ground upon which liability against the city can be fairly placed. Our conclusion, therefore, is that the order of the District Court annulling the award made against said city was properly made as a matter of law, even though placed on different grounds from those herein assigned."

We think the facts of the present case bring it within the reasoning of the Turek and City of Long Beach cases from which we have just quoted. Indeed, we may even paraphrase some of the language quoted from each case and it becomes peculiarly applicable here. The opinion in the Turek case states: "Patently, this plaintiff was not summoned by the traffic patrolman 'to assist in apprehending a person charged with, or convicted of, a criminal offense, or in securing such person when so apprehended, or in conveying him to prison.' No one had been convicted of, or even charged with, a crime."

Substituting the word "decedent" for the word "plaintiff" and the words "special deputy" for the words "traffic patrolman", where they appear in the foregoing quotation, and the statement applies with equal force in the case at bar.

In the City of Long Beach case, after saying it was clear from the record there was no deputization by the local peace officers, nor any occasion to do so, the court observed: "The fact that the officer asked him to keep his eye upon the men and the automobile while he went to the telephone was not an extraordinary request and is one that an officer may have properly made of any citizen who happened to be near by." So here: "The fact that the special deputy asked him (decedent) to direct traffic around the wreck while he took the

injured to a hospital was not an extraordinary request and is one that an officer properly may have made of any citizen who happened to be near by."

It is not an uncommon thing to see members of the Boy Scouts of America and other civic minded groups, who serve voluntarily even if by request of local peace officers, directing traffic at congested centers during Santa Fe Fiesta or at other times and places where large crowds assemble. With little less logic such service, however commendable, could be related to a peace officer's power to summon the posse comitatus and a claim for any injury suffered asserted under the Workmen's Compensation Act. It would be as difficult in the one case as in the other to support the claim in sound reason.

Much is said in the brief of appellants on the receipt or non-receipt of wages by the one claiming to be an employee as determinative of the relationship. Mendoza v. Gallup Southwestern Coal Company, 41 N.M. 161, 66 P.2d 426, is cited in this connection and attention is called to the fact that special deputy Kaufman along with all other special deputies served without pay or wages and that, certainly, the decedent who did not even hold a commission as special deputy, could claim no higher status than that of Kaufman whom he accompanied on this fatal night. It all comes back to the question whether the services of decedent were commandeered. If so, then we may assume he would be entitled to the reasonable value of his services for the period employed, thus supplying the much discussed wage element. But, see Power v. Douglas County, 75 Neb. 734, 106 N.W. 782, casting doubt on the assumption indulged, and Lansdon v. Washington County, 16 Idaho 618, 102 P. 344, seeming to support it. Since on the facts we are compelled to hold as a matter of law that decedent was not an employee of Bernalillo County, it becomes unimportant to determine whether plaintiff's right to recover depends upon decedent's right to remuneration.

The statutes heretofore adverted to, §§ 33-4411, 33-4412 and 33-4414, recognize the distinction for certain purposes between the regular or salaried deputy and the special or non-salaried deputy. And, while § 33-4412 prohibits any such special deputy from exercising any of the functions of his office without first having received his appointment in writing, an omission noted and commented upon here, this inhibition in the very nature of things cannot apply and never was intended to apply to a deputation compulsory in character arising on a call for the posse comitatus. Indeed, the statute itself withholds its application in times of riot or unusual disturbance and when so declared by the public proclamation of the Governor. In City of Long Beach v. Industrial Accident Commission, supra, the Supreme Court of California, speaking of a similar statutory requirement, said: "Its provisions are merely regulatory of the method by which appointments shall be made, and it was not intended thereby to abridge or

conflict with the general laws of the state enacted for the purpose of suppressing riots or for the prevention of threatened breaches of the peace when such tumultuous occasions arise as are within the contemplation of sections 150 and 723, Penal Code."

Seeking to fortify their position and strengthen the analogy claimed to exist in the present situation to that of the peace officer's call on the posse comitatus under § 35-2707, counsel for appellee refer to the provisions of 1929 Comp., Chapter 11, Article 7, regulating traffic on the highways and particularly to § 11-711 giving to sheriffs, their deputies and other peace officers power to make arrests for violation of the regulations imposed. So, they argue, Deputy Kaufman was entitled to call on the decedent under § 35-2707, to aid him in enforcing the provisions of Article 7 of Chapter 11, 1929 Compilation. The weakness in this argument is that it nowhere appears that Deputy Kaufman himself was confronted with any situation requiring aid "in the execution of their (his) office, in any criminal case" or in preserving "the peace, or in apprehending or securing of any person for the breach of the peace, or in the escape or rescue of persons arrested upon civil process". The attempted analogy must fail.

Finally, another theory suggested upon which it is said the judgment may be upheld "is that Kaufman as an employee of Bernalillo County, confronted with an emergency, had implied authority to employ help in dealing with the emergency". Decisions from other jurisdictions are cited holding employees of private business concerns in certain emergencies have implied authority to meet the situation by employing help and that if injury results to the person so assisting, the injury is compensable under workmen's compensation acts. This seemingly is a theory presented here for the first time. But aside from this consideration not a single decision is cited extending the doctrine of these cases to counties and municipalities. As to municipal officers and agents, little authority may be deduced by implication, since ordinarily the authority claimed must be found in a statute or ordinance or it does not exist. It would be a dangerous doctrine to hold that Special Deputy Kaufman possessed the implied authority claimed for him in this connection. 2 McQuillin Municipal Corporations, 2nd Ed., §§ 519, 520.

We find no reasonable ground upon which this judgment against Bernalillo County and its insurer can be sustained. The only possible theory of recovery is that the decedent was an employee of the county. We hold that he was not. It follows the judgment reviewed must be reversed and the cause remanded with directions to the district court to set aside its judgment and enter judgment for the appellants.

It is so ordered.

BRICE, C. J., and MABRY and BICKLEY, JJ., concur.

ZINN, J., being absent, did not participate.