577 P.2d 458

**STATE of New Mexico, Plaintiff-Appellant,**

v.

**Michael LUNA, Defendant-Appellee.**

**No. 3251.**

Court of Appeals of New Mexico.

March 21, 1978.

Writ of Certiorari Denied April 12, 1978.

Toney Anaya, Atty. Gen., Sammy J. Quintana, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

David R. Lee, Albuquerque, for defendant-appellee.

## OPINION

WOOD, Chief Judge.

Defendant is charged with the murder of Nina T. Nelson and aggravated burglary of the Nelson home. After an evidentiary hearing, the trial court suppressed certain items of evidence. The State appealed. Section 21–10–2.1(B)(2), N.M.S.A.1953 (Repl.Vol. 4, Supp.1975). Defendant contends the trial court erred in failing to suppress evidence on additional grounds. Thus, the appeal requires a review of various search and seizure questions ruled on by the trial court.

### The Initial Stop

The trial court's order states:

A. On April 6, 1977, Defendant was observed in an automobile by Officer Fabry, pulling away from a traffic light on Main Street in the City of Roswell at a high acceleration rate, with his tires spinning and the rear-end of the automobile fishtailing.

B. Officer Fabry took up pursuit for the purpose of making a stop of the automobile for exhibition driving, contrary to Section 12–6–12.19 of the Roswell City Code.

C. There was probable cause to make a traffic stop for purpose of issuance of citation under the ordinance.

■ The evidence supports the factual determinations. These facts justify the stop. *State v. Galvan,* 90 N.M. 129, 560 P.2d 550 (Ct.App.1977).

### The Arrest

The trial court's order states:

A. Upon stopping the vehicle of the Defendant, Officer Fabry determined that the Defendant had been drinking, and was under age, and placed him under arrest for permitting himself to be served with intoxicant out of the presence of his parent or guardian.

B. There was probable cause for the arrest. The officer was justified in inferring that a violation was occurring in his presence.

■ The evidence supports the factual determinations. The arrest being based on the officer's observations, it was valid. *City of Roswell v. Mayer,* 78 N.M. 533, 433 P.2d 757 (1967); *Cave v. Cooley,* 48 N.M. 478, 152 P.2d 886 (1944).

### Search I and Seizure I

The trial court's order states:

A. Officer Fabry, following arrest of the Defendant made a field search of the automobile, observed a bottle of whiskey in the automobile and took it into custody.

B. The search and seizure were justified as an automobile search pursuant to lawful arrest.

C. The officer was justified in taking the bottle of liquor into custody.

The evidence supports the factual determinations. The legal basis for the search and seizure is discussed hereinafter under the heading, Search IV.

At this point, our numbering of the searches and seizures departs from the trial court's numbering. This is because the trial court's order misstates the place and time of the second search and second seizure.

### Search II and Seizure II

■ The second search occurred at the place where defendant was initially stopped and arrested, on the public street. This search was of defendant's person, after the valid arrest of defendant for the liquor offense. This search was valid. *State v. Barela,* 88 N.M. 446, 541 P.2d 435 (Ct.App. 1975); see *State v. Vigil,* 86 N.M. 388, 524 P.2d 1004 (Ct.App.1974), cert. denied, 420

U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975).

■ This second search, of defendant's person, resulted in the discovery of a smoking pipe in defendant's pocket. The bowl of the pipe had "heavy residue in it", "was still partially warm" and had an odor of marijuana. The seizure of this pipe was proper as suspected contraband. *State v. Alderete,* 88 N.M. 619, 544 P.2d 1184 (Ct.App.1976).

*Seizure III*

Defendant was taken to the police station in a patrol car; his car was driven to the police station by an officer.

Upon arrival at the police station, defendant was interrogated for approximately thirty minutes about the Nelson homicide. The trial court ruled:

A. During custodial interrogation, the shoes of the Defendant were removed for the purpose of comparison with a track found at the scene of a robbery. The robbery was circumstantially connected to the investigation of the Nelson murder case.

B. The removal of the shoes for such purposes was permissible, and the evidence obtained thereby is not suppressed.

■ The evidence supports the factual determinations. Seizure of the shoes was valid. *State v. Reid,* 79 N.M. 213, 441 P.2d 742 (1968), footnote 1; *State v. Herring,* 77 N.M. 232, 421 P.2d 767 (1966), cert. denied, 388 U.S. 923, 87 S.Ct. 2126, 18 L.Ed.2d 1372 (1967); *State v. Adams,* 80 N.M. 426, 457 P.2d 223 (Ct.App.1969).

*Search III and Seizure IV*

The trial court ruled:

A. Following interrogation at the Police Department the Defendant was taken to the Chaves County Jail for incarceration. Upon searching the Defendant prior to incarceration, a packet of marijuana was found in his undershorts.

B. The custodial search of the Defendant, was justifiable, and the evidence obtained thereby is not subject to suppression.

■ The evidence supports the factual determination. The search and seizure were valid. See case citations under Seizure III.

*Search IV*

Following the custodial interrogation, defendant's car was searched. The trial court ruled:

C. The search of the automobile is variously characterized as an inventory search; a search for contraband; and a search for evidence of his involvement in the Nina Nelson murder. The search was without warrant.

D. The search was not a proper warrantless search. No evidence was seized from the automobile at this time.

Although no evidence was seized during this search, its validity is important because of the evidence suppressed by the trial court. See discussion hereinafter under (a) Search V and Seizure V, and (b) Search VI and Seizure VI.

Characterization of this search as an inventory search would not be proper. There is no evidence that the car was searched for the purpose of inventorying its contents. *State v. Vigil,* supra.

Two reasons appear for the search. Officer Fabry testified that the car was taken to the police station "because we wanted to search the vehicle further." "The original reason I wanted to search it, I wanted to see if there was any other marijuana in the vehicle at the time, or possibly any other liquor in the vehicle." There is evidence that the search occurred after discovery of the marijuana packet in defendant's undershorts and was a search for contraband. There is an inference that the search had nothing to do with discovery of the packet of marijuana; in that the search occurred after the interrogation of defendant in connection with the homicide. Detective Pacheco, aware that other officers desired to search for contraband, searched the car "to find anything I could relate back to the murder scene."

There is no evidence in this transcript showing probable cause to search the car for evidence relating to the homicide. The warrantless search of the car at the police station cannot be justified on this ground.

There is substantial evidence that the police had probable cause to search the car for contraband. By contraband, we mean the marijuana and the liquor since, under the facts, it was improper for defendant to possess either. This probable cause justified the warrantless search at the police station. Our reasoning follows.

The arresting officer could have searched the car at the time and place of the arrest on the liquor charge. Such a search would be justified either as a search incident to an arrest based on probable cause to arrest or a search based on probable cause to search. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *State v. Vallejos,* 89 N.M. 23, 546 P.2d 871 (Ct.App.1976).

The search of the car at the scene was cursory; the car was taken to the police station for a more thorough search for contraband. With these facts, the requirement necessary to justify the police station search was probable cause to search. See *State v. Courtright,* 83 N.M. 474, 493 P.2d 959 (Ct. App.1972). Why? Probable cause to search justified the initial intrusion into the car when it was stopped on the street. See *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), reh. denied, 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971).

Although the initial intrusion, the cursory search at the scene, was justified, on what basis is the delayed search at the police station justified? In *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) defendant had been arrested and taken to the police station; his car had been towed to a garage. The subsequent search of the car "was too remote in time or place to have been made as incidental to the arrest", the warrantless search was held to be unreasonable.

Consistent with *Preston,* supra, *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), reh. denied, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970), held that the delayed police station search was not justified as a search incident to arrest. *Chambers* also held, however, that the delayed search was proper because the officers had probable cause to search the car. "On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house . . . .."

But what of exigent circumstances? Footnote 20 in *Coolidge v. New Hampshire,* supra, states:

It is true that the actual search of the automobile in *Chambers* was made at the police station many hours after the car had been stopped on the highway, when the car was no longer movable, any "exigent circumstances" had passed, and for all the record shows, there was a magistrate easily available. . . . The rationale of *Chambers* is that *given* a justified initial intrusion, there is little difference between a search on the open highway and a latter search at the station.

See the discussion of exigent circumstances in *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

That "exigent circumstances" is not currently an independent requirement for a delayed search of a car at the police station is shown by *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), reh. denied, 423 U.S. 1081, 96 S.Ct. 869, 47 L.Ed.2d 91 (1976). That opinion states:

In *Chambers v. Maroney* we held that police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant. There, as here, "[t]he probable-cause factor" that developed at the scene "still obtained at the station house." 399 U.S., at 52, 90 S.Ct. 1975. The Court of Criminal Appeals erroneously excluded the evidence seized from the search at the station house in light of the trial judge's finding, undis-

turbed by the appellate court, that there was probable cause to search respondent's car.

■ In this case, approximately one and one-half hours had elapsed from the time of the initial stop of defendant's car and the search of that car at the police station. The facts show probable cause to search the car at the scene. Under *Chambers v. Maroney,* supra, and *Texas v. White,* supra, the warrantless search at the police station was constitutionally valid.

*State v. Courtright,* supra, is consistent with the United States Supreme Court decisions upholding the delayed search. However, *State v. Coleman,* 87 N.M. 153, 530 P.2d 947 (Ct.App.1974) considers "exigent circumstances" to be an independent requirement for a warrantless search at the police station. The result in *Coleman* may be explainable on the sparse facts set forth, or on the way the search issue was raised in that case. We recognize, however, that *Coleman* may be read as requiring exigent circumstances for a warrantless search of a car at the police station. We hold that *Coleman* is not applicable authority in the fact situation of this case and is not to be followed. Rather, the applicable authority is *Chambers v. Maroney,* supra, *Texas v. White,* supra, and *State v. Courtright,* supra.

■ We caution that our holding is a narrow one. When a car is validly seized in a public place and taken to a police facility where it is searched without a warrant, the search is valid if there was probable cause to search the car at the place where seized. This does not do away with the requirement of exigent circumstances in other search situations.

In light of the foregoing, the trial court erred in holding that Search IV was invalid.

*Search V and Seizure V*

On April 7, 1977, the day following defendant's arrest and the search of his car, officers were investigating a burglary of the Sanchez residence. During that investigation, it was learned that the bottle of whiskey taken from defendant's car at the time of his arrest (see Search I and Seizure I) was probably stolen from the Sanchez residence at the time it was burglarized. It was also learned that four speakers were also stolen at the time of the Sanchez burglary.

The trial court ruled:

A. . . . Lt. Lacer of the Police Department was assigned to a further search of the automobile for possible stolen property. A search was made, and two stereo speakers and plug-in-jacks were removed from the rear seat of the automobile.

B. There was probable cause for search, but no warrant for search was obtained. A part of the knowledge of the Police Department as to the contents of the automobile had been gained from Search II [Search IV].

C. No exception to the warrant rule is applicable to this search, and the evidence obtained upon such search, consisting of two stereo speakers and plug-in-jacks, should be suppressed.

The evidence does not support the finding that the speakers (and jacks, there being nothing indicating these items should be considered separately) were found as a result of the police station search. The uncontradicted testimony, from Lt. Lacer, is that he returned to the car "to get the speakers, sir, that I knew was in there." How did he know they were there? The evidence is that the speakers were "[i]n the back seat, in plain sight."

■ Defendant contends the speakers were first noticed during the warrantless search of the car at the police station the preceding evening (see Search IV). We disagree. Officer Fabry testified that he observed the speakers in the back seat at the time of the arrest. There is evidence that, at the time of the police station search, two speakers were on the back seat; however, the only evidence is that the speakers were visible to the officer while standing outside the car. Being visible from the outside of the car, the speakers were not discovered as a result of a search.

*State v. Blackwell,* 76 N.M. 445, 415 P.2d 563 (1966); *State v. Anaya,* 82 N.M. 531, 484 P.2d 373 (Ct.App.1971); *State v. Harrison,* 81 N.M. 324, 466 P.2d 890 (Ct.App. 1970); see *State v. Perez,* 79 N.M. 417, 444 P.2d 602 (Ct.App.1968).

The warrantless seizure of the two speakers, once the officers had probable cause to believe they had been stolen in the Sanchez burglary, was proper. *Carroll v. United States,* 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925); *State v. Miller,* 80 N.M. 227, 453 P.2d 590 (Ct.App.1969). See the discussion in *Coolidge v. New Hampshire,* supra, of seizure under the plain view doctrine of objects "not contraband nor stolen nor dangerous in themselves".

The trial court erred in holding the speakers were obtained as a result of a search, erred in ruling that a warrant was required to seize these items, in plain view in the car, when the police had probable cause to believe these items were stolen, and erred in ordering these items suppressed. To the extent the trial court's ruling was based on Search IV, infra, the ruling was also erroneous because Search IV was valid.

*Search VI and Seizure VI*

Following seizure of the speakers, the speakers and the whiskey were identified by Mrs. Sanchez as having been taken during the burglary of her residence.

Officers then applied for a search warrant to search the buildings, grounds and vehicles at a specified residence in Roswell. The warrant was issued, the search was made, and certain items were seized.

The trial court ruled that the affidavit was based in part on information gained by officers during the police station search of defendant's car on the evening of April 6, 1977 (Search IV) and on a police station search of defendant's car on April 7, 1977 which resulted in the seizure of the speakers (Search V and Seizure V). Being of the view that these searches were "warrantless and illegal", the trial court suppressed the items seized in the search pursuant to the search warrant.

The affidavit for a search warrant was based in part on items taken in the Sanchez burglary—the speakers and the whiskey. The trial court was of the view that the speakers had been improperly seized. Inasmuch as the speakers had been properly seized, the trial court's basis for suppressing items seized in the search pursuant to the search warrant was erroneous.

■ Defendant claims, however, that the search warrant was improperly issued because the affidavit

is insufficient on its face in that: 1) It fails to establish the probable cause necessary to demonstrate that evidence of a crime is located at Defendant's house; 2) It fails to establish how affiant was aware of the facts and circumstances alleged in the affidavit; 3) It fails to show that the alleged facts relied on were credible and not mere rumors, suspicions or conclusions and; 4) It does not specify the crime, evidence of which was expected to be found in Defendant's house.

We disagree.

What is the showing in the affidavit as to item 1, the probable cause claim? The affidavit refers to four burglaries in January, 1977; in three of these burglaries, some of the stolen property had been recovered from the people to whom defendant sold it. In each of these four burglaries, entry had been through a window adjoining vacant property. The affidavit refers to three additional burglaries—Taylor, Sanchez and Nelson—and states that the property involved was next "to vacant lots or open areas similar to those which Luna has been involved in." The Sanchez burglary is stated to have occurred approximately April 5, 1977. The dates of the Taylor and Nelson burglaries are not identified in the affidavit.

The affidavit states that items taken in the Sanchez burglary were found in defendant's car.

The affidavit states that a footprint was found three houses north of the Taylor and Nelson residences, that a purse taken in the Taylor burglary was found next to a foot-

print, that the footprint matches the shoe of defendant, that keys taken in the Taylor burglary were found at the point of entry of the Nelson residence.

The affidavit states that defendant had been identified as being in the area where the footprint was found, prior to the Nelson homicide and burglary; that a knife was used in the killing of Mrs. Nelson.

The foregoing shows probable cause to search defendant's residence for evidence of crime.

Defendant contends (item 4) that the affidavit does not specify the crimes, evidence of which was expected to be found in defendant's house. This claim is frivolous. The affidavit seeks to search for charge cards made out to Taylor, for two speakers in addition to the two recovered (four were stolen in the Sanchez burglary), and for a knife and clothing with possible bloodstains (the Nelson crime). The affidavit also seeks to search for "any instrumentalities or fruits of the crime as per attached reports." There are no "attached" reports; but a common sense reading of the affidavit as a whole, *State v. Duran,* 90 N.M. 741, 568 P.2d 267 (Ct.App.1977), is that the reference was to the Taylor and Sanchez burglaries, and the Nelson homicide and burglary.

■ Defendant asserts (items 2 and 3) that the affidavit fails to show how the affiant officer was aware of the facts relied on in the affidavit and fails to show how the facts relied on were credible. Again, a common sense reading of the affidavit as a whole shows the factual allegations were based on police investigations and information in police files. *State v. Alderete,* 88 N.M. 14, 536 P.2d 278 (Ct.App.1975); see *State v. Carter,* 88 N.M. 435, 540 P.2d 1324 (Ct.App.1975).

Those portions of the trial court's order held to be erroneous herein and resulting in the suppression of evidence, are reversed. The other portions of the trial court's order are affirmed.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.