590 P.2d 175

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**John S. SANDOVAL and Patrick Remigio, Defendants-Appellants.**

**No. 3622.**

Court of Appeals of New Mexico.

Jan. 16, 1979.

Robert Suzenski, Santa Fe, for defendants-appellants.

Jeff Bingaman, Atty. Gen., Janice M. Ahern, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendants were convicted of possession with intent to distribute marijuana, and conspiracy to possess marijuana with intent to distribute. Sections 30–31–22 and 30–28–2, N.M.S.A.1978. They appeal. The chain of custody of the marijuana, after its seizure, was sufficiently established. *State v. Chavez*, 84 N.M. 760, 508 P.2d 30 (Ct.App. 1973). We discuss: (1) validity of the initial search, and (2) sufficiency of the evidence.

*Validity of the Initial Search*

An agent stopped a car, with four occupants, at a border patrol checkpoint for the purpose of determining the citizenship of the occupants. Defendants were two of the four occupants; Sandoval was the driver of the car and Remigio was a passenger in the right front seat.

The agent approached the passenger's side of the car and signaled Remigio to roll down the window. When the window was rolled down, the agent "smelled the aroma" of raw marijuana. The agent walked around the rear of the car, approached the driver's side, and asked Sandoval to open the trunk. Sandoval complied. The agent put his head in the trunk and again smelled raw marijuana. The agent then observed a plastic bag underneath the spare tire. It "appeared to be dry vegetable matter inside the bag." Certain events then followed; they are referred to in discussing the sufficiency of the evidence.

Defendants do not challenge the propriety of the initial stop to check their citizenship. Their claim goes to the initial search. The initial search was the opening of the trunk of the car at the agent's direction. Defendants claim there was no legal justifi-

cation for the opening of the trunk. This contention has three points: (a) probable cause, (b) exigent circumstances, and (c) qualifications of the agent.

### (a) Probable Cause

■ Defendants assert the aroma of raw marijuana did not provide probable cause to search the trunk of the car. They are incorrect. The aroma did provide probable cause. *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) points out that an odor sufficiently distinctive to identify a forbidden substance might be evidence of the most persuasive character. "The odor of marijuana detected by . . . [the agent] as emanating from the car furnished him with probable cause to search the trunk." *United States v. Villarreal*, 565 F.2d 932 (5th Cir. 1978). See *United States v. Bowman*, 487 F.2d 1229 (10th Cir. 1973); see cases cited in Judge Hendley's dissenting opinion in *State v. Bidegain*, 88 N.M. 384, 540 P.2d 864 (Ct.App. 1975), the majority opinion being reversed at 88 N.M. 466, 541 P.2d 971 (1975); see also the opinions of Judges Hernandez and Wood in *State v. Kaiser*, 91 N.M. 611, 577 P.2d 1257 (Ct.App.1978).

### (b) Exigent Circumstances

■ Defendants contend that probable cause, alone, was insufficient justification for search of the car's trunk, that exigent circumstances were also required, and that exigent circumstances did not exist in this case. This argument overlooks the "automobile exception". See *State v. Barton*, 92 N.M. 118, 584 P.2d 165 (Ct.App.1978). Exigent circumstances are not required for the search of an automobile stopped on a public highway where there is probable cause for the search. "Why? Probable cause to search justified the initial intrusion into the car when it was stopped on the street." *State v. Luna*, 91 N.M. 560, 577 P.2d 458 (Ct.App.1978) and cases therein cited. See *State v. Lucero*, 70 N.M. 268, 372 P.2d 837 (1962).

### (c) Qualifications of the Agent

Defendants claim the State failed to establish the qualifications of the agent to detect the smell of raw marijuana: "No proof was elicited that Agent Duda had learned to detect or smell that particular odor over any other odors. Nor was there any evidence in the record which would show that the odor of raw marijuana is distinctive, and susceptible to identification."          .

The agent testified that while at the car window on the passenger's side, he smelled raw marijuana. The agent also testified that he could not describe the smell, that marijuana has a distinctive smell with which he was familiar, and that the smell was not of burning marijuana. Inherent in the agent's testimony that he smelled raw marijuana was the claim that he was familiar with the odor of raw marijuana. *United States v. Ludwig*, 508 F.2d 140 (10th Cir. 1974).

■ The agent testified that he had taken courses for the "testing" of marijuana, that he had recently finished a law enforcement course, one semester of which was "drug testing" where he physically handled marijuana, that while in the military police he was "on apprehensions with marijuana" and had made "many, many apprehensions with marijuana with the border patrol in the last two years". The agent testified he had stopped other cars at the same checkpoint; had searched these other cars when he smelled marijuana; that in such searches he found marijuana and had never been mistaken. This testimony sufficiently established the agent's qualifications to detect the odor of raw marijuana. *State v. Everidge*, 77 N.M. 505, 424 P.2d 787 (1967); *State v. Chavez*, 77 N.M. 274, 421 P.2d 796 (1966); *Doe v. State*, 88 N.M. 347, 540 P.2d 827 (Ct.App.1975); *State v. Miller*, 80 N.M. 227, 453 P.2d 590 (Ct.App.1969); see *State v. Foster*, 82 N.M. 573, 484 P.2d 1283 (Ct.App.1971).

### Sufficiency of the Evidence

After the agent observed the white plastic bag under the spare tire in the trunk, he

asked Sandoval what was in the bag. Sandoval replied that it was dough. When the agent said he thought it was marijuana, Sandoval said: "[M]an, don't bust me."

Sandoval then ran and got inside the car and started the engine. The agent asked Sandoval to shut off the engine; Sandoval again stated: "[M]an, don't bust me." "[A]bout that time" Sandoval and Remigio "were observed reaching down to the floorboard near their feet". By this time another border patrol agent had arrived at the car. Fearing that defendants were reaching for weapons, the agents drew their weapons and told defendants not to move. "A couple of seconds later, the subjects did the same thing, they reached down to the floor." One of the agents reached in through the steering wheel to get the car keys. As the agent reached, Sandoval "revved his motor and took off". The agent had expected this and disengaged himself from the car within two or three feet.

The car left the checkpoint with tires spinning. Agents shot out the tires on the left side of the vehicle, but that did not stop the car. The agents were in pursuit in less than a minute. During the pursuit, the agents observed five white plastic bags by the roadside similar to the bag previously observed in the trunk. No other vehicles were encountered during the pursuit.

Agents came upon defendants' vehicle 2.9 miles from the checkpoint. As the agents approached, three of the occupants were "running toward the desert"; Sandoval was "coming out of the desert". When told to "hold it", all the occupants of the car surrendered. Sandoval's footsteps were backtracked; a plastic bag was found near where "marijuana was scattered in clumps all over the desert."

When the agents came upon defendants' vehicle, the trunk was open; the back and bottom part of the rear seat had been lifted up, giving access to the trunk. The plastic bag, previously in the trunk, had been removed. In checking the car, a semiautomatic pistol was found on the right front floor; an ammunition clip for the pistol was in the glove compartment. There was marijuana in the front seat, underneath the rear seat, "on the rear of the car and the outside on the top." There is no issue as to the validity of this second search.

Ten pounds of marijuana and a scale "to weigh pounds" were recovered. There is testimony that the amount of marijuana and its value would be consistent "[w]ith the selling of a wholesale quantity"; "a wholesale amount". Sandoval made the statement that he had purchased the marijuana in Mexico.

■ There is substantial evidence that Sandoval possessed marijuana; he was driving, he had the key to the trunk, he said he bought the marijuana in Mexico. There is substantial evidence that Remigio constructively possessed the marijuana and that there was a conspiracy between Sandoval and Remigio in connection with the marijuana while at the checkpoint. Both men twice reached toward the area where the gun was found. Plastic bags were thrown out of the car after leaving the checkpoint, and the rear seat was removed. Sandoval could not have removed the rear seat because he was driving. All occupants fled the car when it stopped 2.9 miles from the checkpoint. The marijuana was scattered all about the car, either during the flight or as soon as the car stopped. Concerning constructive possession, see *State v. Herrera*, 90 N.M. 306, 563 P.2d 100 (Ct.App. 1977). Concerning conspiracy, see *State v. Thoreen*, 91 N.M. 624, 578 P.2d 325 (Ct.App. 1978).

■ The ten pounds of marijuana, the scale, the packaging of the marijuana in plastic bags, and the testimony that the marijuana was in a wholesale amount, was substantial evidence that possession of the marijuana was with the intent to distribute. *Daygee v. State*, 514 P.2d 1159 (Alaska 1973); *State v. Harris*, 14 Wash.App. 414, 542 P.2d 122 (1975).

The judgments and sentences are affirmed.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.