649 P.2d 756

**STATE of New Mexico,
Plaintiff-Appellant,**

v.

**Edward RYDER, Nellie Cano, and Barry
A. Pressing, Defendants-Appellees.**

**No. 4622.**

Court of Appeals of New Mexico.

Jan. 27, 1982.

Peter M. Hebard, Hebard & Hebard, Alamogordo, Bruce Ponder, El Paso, Tex., for defendant-appellee Ryder.

S. C. Chalekian, Las Cruces, for defendant-appellee Cano.

Charles A. Deason, El Paso, Tex., for defendant-appellee Pressing.

Jeff Bingaman, Atty. Gen., Charles F. Noble, Eddie Michael Gallegos, Asst. Attys. Gen., Santa Fe, for plaintiff-appellant.

## OPINION

WALTERS, Judge.

The trial court entered an order suppressing evidence resulting from search and seizure after a vehicle stop. The State raises two issues on appeal, others in its docketing statement having been abandoned. It contends that the detention of the non-Indian defendants by a Bureau of Indian Affairs police officer was not unlawful, and that the consent of defendant Pressing to search the vehicle was valid. These contentions are contrary to the findings made by the trial court. The facts presented at the sup-

pression hearing are determinative of the law to be applied.

Officer Rocha, a commissioned BIA officer, saw defendants run a highway stop sign within the borders of the Mescalero Apache Indian Reservation. Rocha was not commissioned as a New Mexico peace officer under § 29–1–11, N.M.S.A.1978. Rocha acknowledged that once he recognized the defendant-driver to be a non-Indian, he was without authority to issue a citation for violation of a State traffic law offense. When Pressing was stopped he approached Rocha and handed his driver's license to the officer. Rocha asked Pressing to wait in his pick-up while he called Officer Chino, another BIA officer who was a commissioned New Mexico peace officer. Pressing responded "Yes, sir," and went back to his own vehicle. A few minutes later Pressing again left his pick-up and came to Rocha's car. Because it was a cold day, Rocha invited Pressing to get into the police car with him. Rocha immediately detected a strong odor of marijuana; he asked Pressing if he would return to the pick-up while Rocha made some personal radio calls and when Pressing did so, Rocha called Chino and told him to hurry up because he suspected defendants had marijuana in their possession.

Chino arrived within ten minutes of Rocha's first radio call. After he had issued a ticket to Pressing, Rocha asked if he and Officer Chino could search the cab of the truck because of the strong marijuana smell. Rocha heard Pressing say "Sure." In response to Chino's suggestion that "we would like for his [Pressing's] passengers to step out of the vehicle so we could look inside the cab," Pressing did not reply, but asked the passengers to get out of the pick-up. They did so. Chino and Rocha noted a strong odor of marijuana inside the cab and saw green flakes scattered across the width of the seat. They recovered what they thought was a roach from the ashtray. From the driver's door, Officer Rocha saw a broken box behind the driver's seat and a green leafy substance, suspected to be a quantity of marijuana, in the box. Through the rear window of the camper

shell they could see several taped brown boxes similar to the one found behind the driver's seat. All of the defendants were arrested for possession of marijuana. A search warrant was later issued and officers found in excess of 100 pounds of marijuana in the vehicle.

After the suppression hearing the trial judge entered an order finding that Officer Rocha was empowered to stop defendants' vehicle, but that he lacked authority to detain non-Indians. He further found that Rocha's detention of defendants was unlawful; that Pressing's consent to search the vehicle was not a valid consent, and that the search and seizure was "unlawfully conducted as a result of information obtained during the unlawful detention." All of the evidence seized was ordered suppressed.

The basic question is whether, under the totality of the circumstances, Officer Rocha's request for defendants to wait until another officer arrived was an unauthorized or unconstitutional detention. If the facts support an affirmative answer to that question, we do not reach the other findings of the trial court and the order of suppression must be upheld. *State v. Smallwood*, 94 N.M. 225, 608 P.2d 537 (Ct.App.1980).

Defendants suggest that *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), limits in some manner the jurisdiction of Indian policemen over non-Indians. We do not think that *Oliphant*, which prohibits trial and punishment of non-Indians in Indian tribal or pueblo courts, addresses the question in this case. We are presented with the validity of a detention—an arrest—not a trial or punishment, made by an Indian officer upon non-Indians defendants.

Under our state statutes, an arrest for a state traffic violation must be made by a uniformed full-time peace officer. Section 66–8–124, N.M.S.A.1978. A "peace officer" is defined at § 66–1–4(49) as "every officer authorized to direct or regulate traffic or to make arrests for violations of the Motor Vehicle Code," and § 66–8–125 makes it clear that those officers who may effect

traffic arrests must be "[m]embers of the New Mexico State Police, sheriffs and their salaried deputies and members of any municipal police force." Section 29–1–11 provides the means by which Indian tribal or pueblo police officers may be commissioned by the Chief of the New Mexico State Police, to act as New Mexico police officers and, among other things, to make arrests for violation of state laws. Rocha had not yet been "cross-commissioned" and had no authority to arrest or issue a citation for a state offense; nor did he attempt to do so. No issue is made in any of the briefs regarding the validity of the arrests made by Officer Chino, and the only finding inferentially related to Chino's conduct is the one stating that "the searches and seizures... were unlawfully conducted as a result of information obtained during the unlawful detention."

Although the testimony of the two officers was the only evidence heard by the trial court, and Rocha denied that he would have attempted to stop defendants if they had decided to leave rather than wait for Chino to arrive, we believe the trial court correctly determined that the presence of a uniformed officer, in an official police car, was sufficient to induce defendants to wait for the arrival of Chino. Thus, there is substantial evidence to support a finding of detention.

The crucial question is whether defendants were unlawfully detained so as to require suppression of the fruits gained during the period of detention.

■ All parties overlook what we consider are significant facts in this case. Traffic Ordinance #8 for the Mescalero Apache Reservation was admitted into evidence, and Articles II and III of the ordinance authorize tribal police officers to enforce obedience to traffic signs within the reservation. The ordinance requires all drivers on the reservation to stop at stop signs. Thus, Officer Rocha had authority to stop and issue a tribal citation, if he chose to do so. The trial court recognized Rocha's authority to stop defendants. The stop, of course, need not have been limited

only to an identification of defendants as Indian or non-Indians, because *Oliphant* does not prohibit an arrest of non-Indians. Indeed, *Oliphant* tacitly acknowledges that such an arrest may be made, so long as the Indian authorities "promptly deliver up any non-Indian offender, rather than try and punish him themselves." 435 U.S. at 208, 98 S.Ct. at 1020, 55 L.Ed.2d at 221.

■ We need not be concerned with other provisions of the tribal ordinance relating to the manner in which traffic violators shall be cited and ordered to appear in tribal court, nor with the circumstances cited in the ordinance under which an Indian offender may be taken into custody by tribal police. The Supreme Court's direction in *Oliphant, supra,* regarding the procedure to be followed in handling non-Indian offenders, after arrest, definitively forecloses any other provisions found in the tribal code, absent congressional authority to the contrary. *Oliphant, supra.*

If Officer Rocha had authority to stop defendants, only the reasonableness of the detention need be examined. We said, in *State v. Lewis,* 80 N.M. 274, 454 P.2d 360 (Ct.App.1969), that in judging an intrusion into a citizen's Fourth Amendment rights, the objective standard was whether the facts available to the detaining officer would warrant a person of reasonable caution to believe the action taken was appropriate.

■ It can be assumed that Officer Rocha knew he could arrest defendants for violation of the Indian ordinance, and turn defendants over to state authorities for trial, but that he could not cite them for violating the state statute. It can also be assumed he knew Officer Chino not only could issue a state citation but that, under *State v. Calanche,* 91 N.M. 390, 574 P.2d 1018 (Ct.App.1978), Officer Chino could have arrested defendants for a state violation, if done with reasonable promptness after the offense was committed, based upon Officer Rocha's eyewitness information that the offense had been committed. Section 66–8–125B, N.M.S.A.1978. It can-

not be said that Officer Rocha's request for defendants to wait until Officer Chino got there was unreasonable, or that he should have believed his action inappropriate, if the arrest by Chino or delivery of defendants to him by Officer Rocha would have been acceptable in any event. *Oliphant, Lewis, Calanche,* supra.

The Mississippi Supreme Court said, in *Smith v. State,* 228 Miss. 476, 87 So.2d 917 (1956), that among circumstances justifying a delay between observance of the offense and arrest was the summoning of assistance where it may be necessary. The assistance of a state officer was necessary in this case either to arrest defendants for a state violation or, if defendants had been arrested for violating the reservation ordinance, to receive defendants for further proceedings against them. *See Eaton v. Bernalillo County,* 46 N.M. 318, 324–325, 128 P.2d 738 (1942), concerning the authority of a police officer to summon aid in a proper case. The instant matter, on its facts, differs from and is stronger than *Eaton,* in that here a peace officer (rather than a civilian) was asked to provide assistance to another officer. The discussion in *Eaton* leaves no doubt that Officer Rocha was vested with power to request assistance.

To hold that an Indian police officer may stop offenders but upon determining they are non-Indians must let them go, would be to subvert a substantial function of Indian police authorities and produce a ludicrous state of affairs which would permit non-Indians to act unlawfully, with impunity, on Indian lands. There is a difference between a lawful arrest and detention, and an unlawful or unauthorized issuance of a citation. That distinction was not considered in this case. Officer Rocha accomplished what *Oliphant,* supra, requires, by radioing for assistance from Officer Chino.

A second reason will support our refusal to hold the detention unlawful. If we were to agree that because Rocha was an Indian tribal police officer he had no authority under State law to arrest or detain non-Indians, we would be stripping him of any police authority in this case, and converting him to the status of "private citizen." Without police authority, this case cannot be analyzed as a prohibited police intrusion upon citizens' rights, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); nor can it be analogized to an unlawful detention by police officers, as in *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). It falls more properly within the category of cases typified by *United States v. Andrews,* 474 F.Supp. 456 (D.C.Colo.1979); *United States v. Edwards,* 602 F.2d 458 (1st Cir. 1979); *United States v. Gumerlock,* 590 F.2d 794 (9th Cir. 1979); and *McConnell v. State,* 595 P.2d 147 (Alaska 1979). In each of those cases, personal possessions were searched by non-governmental airlines personnel, and police arrests or searches subsequently were made as a result of the information obtained by the airline employee. Those decisions uniformly held that because the person who obtained the information through the initial search (which led to arrest) was not a law-enforcement officer, there was insufficient governmental participation to invoke the constitutional protection against an unreasonable search. The issue here is whether the information obtained during detention by a person not commissioned as a state officer was unlawfully obtained. The constitutional focus, however, whether related to detention or search, is upon Fourth Amendment privileges and is, therefore, the same here as in the airline cases.

*Andrews,* supra, at 474 F.Supp. 460–61, said: "The burden is on the defendant to establish government involvement in a challenged search." In *McConnell,* supra, the Alaska court observed that:

If Powledge [the person who opened the freight package] was acting as a state agent, his conduct was subject to the warrant requirement in the fourth amendment and the similar provision embodied in the Alaska Constitution. If Powledge was acting as a private citizen, however, the warrant clauses have no application, for the proscriptions against unreasonable searches and seizures ... apply only to governmental action.

To like effect was the rationale in *United States v. Edwards, supra,* where defendants argued that the fruits of a private employee's search should be suppressed. The court ruled that because there were no statutory or regulatory requirements for security screening of air freight parcels, defendants there had failed to show "sufficient governmental involvement to warrant application of the Fourth Amendment" to the employee's actions. 602 F.2d at 646. *See also Gumerlock, supra,* which held that the allegedly illegal search by an airline employee "is not subject to the Fourth Amendment [simply] because the private actor is motivated in whole or in part by a unilateral desire to aid in the enforcement of the law." 590 F.2d at 800.

Appellants have urged here that Officer Rocha was not able to assert either tribal or state authority in asking defendants to wait until another officer came to the scene of the offense. They further contend, however, that it was reasonable for them to believe they were not free to go and, therefore, they were subjected to an unconstitutional seizure of their persons. Consequently, they say, the information obtained by Rocha during the ten-minute detention was an illegal fruit of the poisoned tree requiring suppression. Numerous cases are cited to support the proposition that an unreasonable police detention during which incriminatory evidence is discovered constitutes an unlawful intrusion into one's Fourth Amendment privileges. Those cases are not in point, however, because if Rocha was not an authorized police officer at the time of the detention, there was no "police" intrusion about which defendants can complain, or to which constitutional protections extend. *Andrews, supra.*

Under the circumstances, the detention was not unlawful, and the information obtained during the period of detention was, likewise, not unlawful.

■ Probable cause to search the vehicle of defendants for marijuana was obtained during the ten-minute period of lawful detention, awaiting the arrival of Officer Chino. *State v. Sandoval,* 92 N.M. 476, 590 P.2d 175 (Ct.App.1979). The entry into, and warrantless search of, the vehicle stopped on a public highway, on the basis of this probable cause, was valid. *State v. Barton,* 92 N.M. 118, 584 P.2d 165 (Ct.App.1978); *State v. Luna,* 91 N.M. 560, 577 P.2d 458 (Ct.App.1978). The fruits of the search are not tainted and may be admitted against defendants at trial. Thus, we need not consider the "consent" question.

We overrule the order of suppression and remand the case for proceedings consistent with this opinion.

WOOD, J., concurs.

ANDREWS, J., dissents.

ANDREWS, Judge (dissenting).

I dissent.

In *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), the United States Supreme Court was asked to determine whether Indian tribal courts have jurisdiction over non-Indians who commit criminal acts involving Indian victims in Indian country. The Court held that tribal courts cannot exercise criminal jurisdiction over non-Indians. However, in so doing, the Court asserted that:

> [t]he history of Indian treaties ... is consistent with the principle that Indian tribes may not assume criminal jurisdiction over non-Indians without the permission of Congress. 435 U.S. at 197–98, n.8, 98 S.Ct. at 1015 n.8.

A flurry of interest and concern resulted from this opinion. In New Mexico, the Legislature, in an attempt to overcome some of the possible ramifications of *Oliphant,* provided for cross-commission of all Indian tribe or pueblo law enforcement officers, § 29–1–11, N.M.S.A.1978, and thus solved a potentially difficult question of criminal jurisdiction.

In the instant case, Officer Rocha, a commissioned BIA officer who had not been commissioned pursuant to § 29–1–11, acted outside his authority when he detained the defendants. While *Oliphant* does, as sug-

gested in the majority opinion, acknowledge that arrests of non-Indians may be made—this is only true where authority to arrest and detain exists. Traffic Ordinance No. 8 of the Mescalero Apache Reservation, under which Officer Rocha derived his authority, at Art. IX, § 2(a), is specific about the detaining of a violator. It is this section that creates a problem with the opinion. Section 2(a) states:

> (a) Except when authorized or directed to immediately take a person arrested for a violation of the traffic laws before a Judge of the Mescalero Apache Indian Court of Offenses, any officer of the law ... shall take the name, address, and operator's license number of the vehicle involved and shall issue the violator either a verbal or written notice to appear to answer the charges against him.... The officer, upon receiving the promise ... *shall release such person from custody.* (Emphasis added.)

Authorization to take a person into custody is limited, and appears in the next sentence.

> The only exceptions to this provision shall be in the case of an alleged drunken, reckless, or careless driver and persons found to be in the company of an alleged drunken driver.

Defendant was not cited for any of the exceptions listed, and should therefore not have been detained by the officer. If the issue is the "reasonableness of the detention", I believe a discussion of the limitation on Officer Rocha's authority to detain is necessary. Where the ordinance that empowers the stop specifically prohibits detention, such a detention is illegal. I cannot agree that a search that arises out of the unlawful detention can be tolerated. The suppression order was correct and should be affirmed.