895 P.2d 212

**Leroy ROMERO, Plaintiff–Appellant,**

v.

**Paul SANCHEZ, Defendant–Appellee.**

**No. 21752.**

Supreme Court of New Mexico.

April 24, 1995.

Grisham & Lawless, P.A., Thomas L. Grisham, Albuquerque, for appellant.

Carpenter, Comeau, Maldegen, Brennan, Nixon & Templeman, Joseph E. Manges, Santa Fe, for appellee.

## OPINION

RANSOM, Justice.

Leroy Romero sued State Police Officer Paul Sanchez under 42 U.S.C. § 1983 (1988) and the New Mexico Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (Repl.Pamp.1989 & Cum.Supp.1994). Romero asserted causes of action based on criminal trespass, assault, false imprisonment and unlawful detention, and burglary and larceny. He also claimed that Officer Sanchez committed breaking and entering, an unlawful search, and violation of property rights. The district court granted the motion of Officer Sanchez for summary judgment because no genuine issue of material fact exists with respect to Romero's claims of assault, false imprisonment, burglary, larceny, and breaking and entering and because Officer Sanchez is entitled to qualified immunity. Romero appeals.

In an opinion filed August 9, 1994, we affirmed the trial court on the counts of criminal trespass, assault, false imprisonment and unlawful detention, and burglary and larceny; and we reversed the trial court on the counts of breaking and entering, unlawful search, and violation of property rights. Sanchez moved for a rehearing, which we granted. On rehearing, after reviewing additional briefs filed at our request and with the benefit of oral argument, we now believe that our original ruling was in error. We therefore withdraw the original opinion and sub-

stitute this opinion affirming the trial court in full.

■ *Standard of review.* In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the United States Supreme Court held that public officials performing discretionary functions enjoy a qualified immunity when "their conduct does not violate clearly established [law] of which a reasonable person would have known." This immunity extends to law enforcement officers. *Malley v. Briggs,* 475 U.S. 335, 340, 106 S.Ct. 1092, 1095–96, 89 L.Ed.2d 271 (1986) (stating that police officers are entitled to qualified immunity in § 1983 suits). A finding of qualified immunity shields the officer from suit, not just from liability for monetary damages. *Oldfield v. Benavidez,* 116 N.M. 785, 789, 867 P.2d 1167, 1171 (1994); *accord Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411 (1985) (stating that qualified immunity "is an *immunity from suit* rather than a mere defense to liability").

■ As the Supreme Court acknowledged in *Harlow,* using the objective reasonableness standard to determine qualified immunity issues "permit[s] the resolution of many insubstantial claims on summary judgment." 457 U.S. at 818, 102 S.Ct. at 2738. Under the *Harlow* standard "we examine whether the [party opposing summary judgment] has presented evidence to support a violation of clearly established law." *Carrillo v. Rostro,* 114 N.M. 607, 615, 845 P.2d 130, 138 (1992); *see also Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815 (stating that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal"); *Romero v. Fay,* 45 F.3d 1472, 1475 (10th Cir.1995) (same). On a summary judgment motion the issue is an "essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815.

■ Thus under *Harlow, Mitchell,* and *Carrillo,* determining whether summary judgment is appropriate based upon a defense of qualified immunity requires a two-step analysis. First, a court must look at the undisputed facts and those facts adduced by the party opposing summary judgment to see if there is any evidentiary support for finding a possible violation of law. Second, if the law may have been violated, a court must ask if that law was clearly established at the time of the alleged violation. *See, e.g., Emery v. Holmes,* 824 F.2d 143, 147 (1st Cir.1987) (applying two-step analysis to summary judgment motion in case involving qualified immunity defense); *Abouzari v. Foster,* 795 P.2d 1386, 1389 (Colo.Ct.App.1990) (same).

*Facts.* The undisputed facts and the evidence presented by Romero include the following. On February 20, 1992, Romero enlisted the aid of some friends to help him move his mobile home to a lot he owned. Before the home could be moved entirely onto Romero's lot, Romero determined that he should obtain the assistance of a towing company because he feared that his mobile home might become stuck or "high-centered." He called several towing companies and eventually got a response from Highland Wrecker Service and Body Shop.

Highland gave Romero a telephone estimate that the job would cost $50 to $55. Romero agreed to this price and Highland sent a driver to Romero's lot to complete the job. It took several hours and two Highland drivers to move the mobile home completely onto Romero's lot. While Highland was trying to complete the job, the home hit a post causing some damage; the right-side tires became flat, the axle underneath the mobile home became bent, and the frame was damaged. After some negotiation, and before unhooking the home, Highland sought payment of $200 for the tow job. Romero refused to pay because he wanted to assess the damage that Highland had caused. Romero asked the Highland drivers, including Steve Lucero, to leave, but Lucero refused to leave until he had been paid.

Romero left his property to go call a sheriff for help in getting Lucero to leave. While Romero was gone, Lucero called the New Mexico State Police. Before Romero returned, Officer Sanchez responded to Lucero's call. When Romero returned he discovered that either Lucero or Officer Sanchez

had broken the lock on his mobile home, that both Lucero and Officer Sanchez had entered the home, and that Lucero was searching through Romero's possessions. Romero was visibly upset by these discoveries.

The first time Romero came into contact with him, Officer Sanchez was in the living room of Romero's home. Officer Sanchez's badge and gun were plainly visible during the whole encounter. Romero asked Officer Sanchez what was going on and accused Officer Sanchez and Lucero of "breaking and entering." Officer Sanchez responded by saying "No, we're not" and "this man [meaning Lucero] is going to get paid."

Shortly thereafter Officer Sanchez escorted Romero from his home. Once outside, Romero asked if he could leave. Officer Sanchez told Romero that he would have to stay on the premises until Lucero had finished and that Romero would then have to sign some papers. The papers Officer Sanchez was referring to were a release indicating that Romero understood that the items Lucero removed from the mobile home were being kept as collateral for the unpaid towing bill. After approximately fifteen to twenty-five minutes, Lucero emerged with a television set, a microwave oven, and a vacuum cleaner. While waiting for Lucero to finish selecting items for collateral, Officer Sanchez watched Romero, and Romero says Officer Sanchez had his hand on his gun the entire time. Officer Sanchez admits to having his arm or elbow on his gun and also states that this is his standard practice when dealing with the public.

■ *The trial court properly dismissed the trespass, assault, false imprisonment, unlawful detention, and burglary and larceny claims because Sanchez did not violate the law.* The facts demonstrate that Officer Sanchez had a right to be on Romero's property. As a police officer, Sanchez had a duty to be a "conservator[ ] of the peace." NMSA 1978, § 29–2–18(A) (Repl.Pamp.1994). Officer Sanchez was dispatched to the scene of a private dispute. When he arrived, Romero was not there. Lucero told Officer Sanchez that Romero had refused to pay for a towing job and that he feared Romero might have left to get a weapon. Based upon these

facts, Officer Sanchez had a duty to investigate further, *see* NMSA 1978, § 29–1–1 (Repl.Pamp.1994) (stating that every peace officer has a duty to investigate all criminal violations), as well as a continuing duty to preserve the peace. Hence summary judgment as to Romero's criminal trespass claim was appropriate as a matter of law.

■ Romero's assault claims also were properly dismissed. An assault requires a "threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery." NMSA 1978, § 30–3–1(B) (Repl. Pamp.1994). The facts adduced by Romero indicate that he obeyed Officer Sanchez because he feared that he would be arrested if he did not. Fear of arrest is not equivalent to fear of an imminent battery; there was no assault as a matter of law.

■ Summary judgment also was appropriate on the false imprisonment and unlawful detention claims. Under New Mexico law, "[f]alse imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." NMSA 1978, § 30–4–3 (Repl.Pamp.1994). Unlawful detention has similar requirements. *See State v. Ryder,* 98 N.M. 453, 455, 649 P.2d 756, 758 (Ct.App.) (stating that court must examine detention to see if facts available to detaining officer would warrant person of reasonable caution to believe detention appropriate), *aff'd,* 98 N.M. 316, 648 P.2d 774 (1982). Officer Sanchez was not guilty of false imprisonment or unlawful detention as a matter of law. He was within his rights to separate Romero and Lucero because of the prior dispute over the towing bill and because Romero was visibly upset with Lucero. *See* § 29–2–18(A) (stating that state police have duty to be conservators of the peace). Under these circumstances, Officer Sanchez reasonably could have believed that detaining Romero was necessary to preserve the peace and to further his investigation of the tow-bill dispute. *See Perea v. Stout,* 94 N.M. 595, 600–01, 613 P.2d 1034, 1039–40 (Ct.App.) (holding law enforcement officer's reasonable belief that seizure and detention of plaintiff

was necessary was a defense to claim of false imprisonment), *cert. denied,* 94 N.M. 674, 615 P.2d 991, *and cert. denied,* 449 U.S. 1035, 101 S.Ct. 610, 66 L.Ed.2d 496 (1980). Because Officer Sanchez had a reasonable belief based upon the available facts that his actions were necessary to carry out his statutory duties as a law enforcement officer, summary judgment was appropriate. *Cf. Ryder v. State,* 98 N.M. 316, 319, 648 P.2d 774, 777 (1982) (determining that issue in unlawful detention cases is whether initial detention and action taken pursuant to that detention were reasonable).

■ Finally, the burglary and larceny claims also must fail as a matter of law. Each of these crimes requires that the perpetrator have an intent to deprive the lawful owner of his property permanently. *See, e.g., State v. Eckles,* 79 N.M. 138, 140, 441 P.2d 36, 38 (1968) (stating that intent to deprive lawful owner of property permanently is an essential element of larceny). The undisputed facts here show that even if Lucero wrongfully deprived Romero of his property, such deprivation was not accomplished with the intent to deprive Romero of his property permanently. Lucero simply intended to keep the items he removed from Romero's trailer until such time as his possessory lien was satisfied. Therefore, summary judgment also was appropriate on these claims.

■ *Officer Sanchez did not violate clearly established law with respect to claims of breaking and entering, unlawful search, and violation of property rights.* In our original opinion we held that Romero had asserted sufficient facts to support possible violations of the law with respect to the remainder of his claims—breaking and entering, unlawful search, and violation of property rights. Our ruling was based on this Court's decision in *Waisner v. Jones,* 107 N.M. 260, 755 P.2d 598 (1988). In *Waisner* we held that the introduction of law enforcement personnel into the self-help repossession procedure established by NMSA 1978, Section 55-9-503 (Repl.Pamp.1987) (allowing secured party to take possession of collateral upon default) violates due process unless the defaulting party is afforded notice and an opportunity

to be heard. *Waisner,* 107 N.M. at 263, 755 P.2d at 601. This holding was based on the notion that "[w]hen either the federal or state government acts to deprive a person of property without due process of law, it acts unconstitutionally." *Id.* We noted that self-help repossession was a private remedy, *id.,* and we concluded that when a law enforcement officer assists a repossessor in securing his rights by accompanying the repossessor and confronting the alleged debtor, the due process requirements of the Fourteenth Amendment are triggered, *id.* at 263–64, 755 P.2d at 601–02. Our primary concern was that the presence of the law enforcement official might "chill the legitimate exercise of the defaulting party's rights" to resist the repossession and force the creditor to seek a judicial remedy. *Id.* at 264, 755 P.2d at 602.

Relying on *Waisner* in our original opinion, we determined that Officer Sanchez acted lawfully when he responded to Highland's call reporting a private disturbance, investigated the details of that disturbance, and separated Romero from Lucero in order to preserve the peace. These were his statutory duties. We also determined, however, that Officer Sanchez acted unlawfully when he helped Lucero gain access to Romero's home, confronted Romero in his home by telling him that "this man is going to get paid," and forced Romero to stay on the premises to sign a release. We believed that these acts violated the clearly established law set out in *Waisner* because Officer Sanchez did not provide Romero notice and opportunity to be heard prior to aiding Lucero. Believing Officer Sanchez violated clearly established law, we held that he was not entitled to qualified immunity.

On rehearing, Officer Sanchez challenges the applicability of *Waisner,* arguing that *Waisner* is limited to instances of self-help repossession. Officer Sanchez contends that in this case he did nothing more than maintain the status quo, preserving the peace while Lucero enforced his possessory lien rights by retaining collateral security. Romero counters, arguing that *Waisner* clearly establishes that a law enforcement officer may not act on his or her judgment regarding the conflicting rights of parties to

a private dispute nor may he or she change the status quo. Officer Sanchez allegedly violated this law when he and Lucero broke into Romero's trailer and when he constrained Romero because by these actions Officer Sanchez attempted to resolve a private dispute.

—*Definition of clearly established law.* In *Carrillo v. Rostro*, 114 N.M. 607, 615, 845 P.2d 130, 138 (1992), this Court considered the circumstances under which a law may be deemed "clearly established". We defined the inquiry to be whether the official "violate[d] clearly established law of which a reasonable person would have known." *Id.* Elaborating on this inquiry, we noted that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 622, 845 P.2d at 145 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

—*The law is unclear whether Officer Sanchez could aid Lucero in his attempt to enter a trailer and remove personal property as collateral security for a possessory lien.* Under New Mexico law a tow truck operator is entitled to a statutory lien against an automobile that has been towed. NMSA 1978, § 48–3–19 (Repl.Pamp.1987). Moreover, "a person entitled to [a towing lien] may retain such automobile in his possession until such lien is paid." Section 48–3–20. We assume that Romero's trailer was an "automobile" within the meaning of the lien statute, *see* § 48–3–21, and that Highland's towing of the trailer gave rise to a statutory lien. Applying the statutory provisions to the facts of this case, we conclude that if Lucero had possession of Romero's trailer, he was entitled to retain possession of it until paid. We also assume, and Romero concedes, that under such circumstances Officer Sanchez could preserve the peace and prevent Romero from retaking the property without violating Romero's constitutional rights.

The parties dispute on appeal whether Lucero retained possession of the trailer as a matter of law. The parties also dispute whether the statutory lien against the trailer

extended to the contents of the trailer, whether Lucero had the right to enter Romero's trailer and remove personal property as collateral security for the possessory lien, and whether Officer Sanchez could protect, aid, and abet that activity in light of Romero's objection. We, however, need not address the issues of who had possession of the trailer and whether Highland's statutory lien extended to the contents of the trailer in order to determine that Sanchez is entitled to qualified immunity. Neither of these issues has been addressed by published opinion or statute, and Officer Sanchez could not be expected to conform his conduct to law not yet established.

In particular, none of the applicable cases or statutes address whether a statutory lien on a trailer extends to its contents. While *Waisner* involved the *repossession* of property, this case arguably involves the *retention* of property already in possession of the lienholder. In the first instance the defaulting party has a right to challenge the creditor's self-help repossession, and law enforcement officials cannot be introduced in aid of repossession because such would "chill the legitimate exercise of the defaulting party's rights." *Waisner*, 107 N.M. at 264, 755 P.2d at 602. In this case Romero asserts an uncertain right to challenge Highland's enforcement of a statutory lien against the contents of a trailer that were arguably in Highland's possession.

We disagree with Romero's argument that *Waisner* may be read for the proposition that law enforcement officials may never be introduced into private disputes. When a private dispute erupts, a law enforcement officer performs a public duty by preserving the peace and will not be required to participate in a lawsuit unless his actions violated clearly established law. When a towing company acts to retain possession of a vehicle for which it has by agreement provided towing services and for which services it has not been paid, the objectively reasonable conduct of an officer called to the scene of a private dispute over that lien, done to preserve the peace, does not violate clearly established law.

**696**

Although "constitutional requirements of due process apply to garnishment and prejudgment attachment procedures whenever officers of the State act jointly with a creditor in securing the property in dispute," *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 932–33, 102 S.Ct. 2744, 2751, 73 L.Ed.2d 482 (1982), the retention of property already secured pursuant to a towing lien is a different matter. While arguing that an officer of the State cannot interject himself and the power of the State into a civil dispute to do more than preserve the peace and the status quo, Romero concedes that the officer may protect a lienholder in possession from attempts by the owner to retake the property. The fact that Lucero would have the right to retain a trailer in its possession, coupled with the lack of any clear legislative or judicial statement defining Lucero's possession of or right to enter the trailer, made the law uncertain in this area.

The doctrine of qualified immunity applies when an officer's actions are objectively reasonable. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). A police officer of reasonable competence could conclude under these circumstances that Lucero had possession of and a statutory lien against the trailer and its contents. Therefore Officer Sanchez is entitled to qualified immunity because there is no proof that he violated clearly established law, and he should not be made to stand trial on the § 1983 claims.

*Applicability of qualified immunity to the Tort Claims Act.* Whether the doctrine of qualified immunity protects an official from an action brought under the Tort Claims Act is an open question. The Act was passed prior to the genesis of the modern qualified immunity law established in *Harlow.* Further, qualified immunity has developed· as a defense to § 1983 actions and to corresponding actions against federal officials under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See, e.g., Anderson,* 483 U.S. at 637, 107 S.Ct. at 3037–38 (*Bivens* action against FBI agent); *Mitchell,* 472 U.S. at 513, 105 S.Ct. at 2808–09 (*Bivens* action against United States for warrantless wire-

tap); *Carrillo,* 114 N.M. at 609, 845 P.2d at 132 (Section 1983 action). In this case both parties assumed that qualified immunity does protect officials from actions brought under the Tort Claims Act and, as a result, did not argue in the trial court whether the doctrine of qualified immunity from suit under § 1983 applies to liability for which immunity is specifically waived under the Tort Claims Act. Although we question the parties' assumption, we will not address the question here because it is not properly before us.

*Conclusion.* Because the facts Romero alleged are insufficient to show a possible violation of law, the trial court properly dismissed the claims of trespass, assault, false imprisonment, unlawful detention, and burglary and larceny. Further, because the facts do not show that Officer Sanchez violated clearly established law, he is entitled to qualified immunity as to the claims of breaking and entering, unlawful search, and violation of property rights. Therefore the trial court is affirmed.

**IT IS SO ORDERED.**

FRANCHINI and MINZNER, JJ., concur.