641 P.2d 484

**STATE of New Mexico, Petitioner,**

v.

**Richard E. CAPPS, Respondent.**

**No. 13486.**

Supreme Court of New Mexico.

Jan. 27, 1982.

Rehearing Denied Feb. 26, 1982.

454

Jeff Bingaman, Atty. Gen., Charles F. Noble, Anthony Tupler, Asst. Attys. Gen., Santa Fe, for petitioner.

Charles Louis Roberts, Joseph Abraham, Jr., El Paso, Tex., for respondent.

## OPINION

RIORDAN, Justice.

Defendant Richard E. Capps (Capps) was convicted of possession of marijuana with the intent to distribute. § 30–31–22(A)(1), N.M.S.A.1978 (Repl.Pamp.1980). The Court of Appeals reversed the defendant's conviction holding that a police officer had conducted an unlawful car search by tearing open one of nine plastic bags that contained marijuana, located in the car's trunk. We granted certiorari, and we reverse the Court of Appeals.

The issue presented on appeal is whether the police officer pursuant to the "automobile exception" could search the trunk of a car and open the plastic bags located in the trunk.

A police officer, who was a narcotics investigator with 16 years of law enforcement experience, validly[1] stopped a car driven by James Lear (Lear) and occupied by Capps. When he approached the car, the officer smelled marijuana and talcum powder coming from the car. The officer knew from experience that talcum powder was frequently used to mask the odor of marijuana. The officer asked if Lear minded if he looked inside the trunk. Lear answered, "No, I guess not." However, before unlocking the trunk, Lear attempted to bribe the officer saying, "Look, Officer, can't we make a deal? If you'll just forget this whole thing, I'll make it worth your while."

The officer refused the bribe and ordered Lear and Capps to keep their hands where he could see them. Lear then volunteered the statement, "We got no guns. We got dope, but we don't got no guns." When Lear opened the trunk of the car, the smell of marijuana and talcum powder became stronger. The officer observed nine dark green trash bags with silver tape sealing them and a brown paper bag. The officer then tore a hole in one of the trash bags and also looked inside the brown paper bag. They contained marijuana.[2]

The trial court ruled that the officer had probable cause to search the trunk and bags and that no warrant was needed.

Two well recognized exceptions to obtaining a search warrant are: search incident to arrest and the automobile exception, sometimes referred to as the *Carroll* Doctrine. The common element running through these two exceptions is exigency.

*Incident to Arrest*

In *Agnello v. United States*, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), the Court held that a lawful arrest gives rise to a contemporaneous search of the place where the arrest is made in order to find and seize items connected with the crime. *Agnello* did not, however, define the extent of such a search. In *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), a search of a closet was upheld as incident to an arrest. However, in *United States v. Lefkowitz*, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932), the Court held unlawful a search of desk drawers and a cabinet despite the fact that the search had accompanied a lawful arrest. But in *Harris v. United States*, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), *overruled on this issue*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), a search of an entire apartment was upheld as incident to an arrest. Thus, we find that the Supreme Court has broadened and narrowed the perimeters, of the search incident to arrest exception, over the years.

---

1. Prior to trial, the Court of Appeals granted the defendant an interlocutory appeal to determine whether the stop was valid. The Court of Appeals in a memorandum opinion, found the stop valid.

2. The nine plastic bags contained approximately 88 pounds of marijuana.

In *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the permissible extent of a search incident to a lawful arrest was redefined. In *Chimel*, the defendant was arrested inside his home. The officers making the arrest searched the defendant's entire house looking for evidence of the crime. The Court held that incident to an arrest, a search is confined to the area within the *immediate control* of the defendant in order to seize weapons and/or to prevent the destruction of evidence. Therefore, the seizure in *Chimel* was unlawful.

In the recent United States Supreme Court case *New York v. Belton*, —— U.S. ——, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), it now appears, that in reference to car searches, the limits of a search incident to an arrest have been expanded or redefined. The officer in *Belton* stopped a car for speeding. When he approached the car, he smelled marijuana. The officer arrested the four occupants and then searched the passenger compartment. On the back seat, he found a black leather jacket belonging to Belton. He unzipped one of the pockets and discovered cocaine. The Supreme Court upheld the search. The Court stated that "when a policeman had made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 2864. The Court further held that "the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within the reach of the arrestee, so also will containers in it be within his reach." *Id.*

## Automobile Exception

The "automobile exception", also referred to as the *Carroll* Doctrine, has also been a difficult area in understanding the permissible limits of a warrantless search. The exception began with *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). A car was stopped and searched without a warrant. The search turned up 68 bottles labeled "scotch whiskey" and "Gordon's gin". Carroll was convicted of violating the National Prohibition Act. The Supreme Court held that a search is proper when it is not practicable to secure a warrant because of the mobility of an automobile. However, before a search can be conducted two requirements must be met:

1) There must be probable cause[3] that the automobile contains evidence of a crime, and

2) there must be an exigency to search the automobile at that moment, because of the automobile's mobility and fear that evidence could be destroyed.

Between 1925 and 1970, the *Carroll* Doctrine was seldom relied on and was not really developed by the Supreme Court decisions, probably because most cases were decided under the "search incident" exception that was broadly interpreted prior to *Chimel*.[4] There were opinions during this time citing *Carroll*, *e.g.*, *United States v. Lee*, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); *Gambino v. United States*, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293 (1927); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), but not until *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (the year after *Chimel*), did the Supreme Court breathe new life into the *Carroll* Doctrine. *Chambers* dealt with a gas station robbery. The two men involved were arrested and their car was taken to the police station and searched without a warrant. During the search, evidence of the robbery was found. The search was upheld under the *Carroll* Doctrine. The Court held that the officers had probable cause to believe that the rob-

---

3. The United States Supreme Court in *Carroll, supra* 267 U.S. at 161, 45 S.Ct. at 288, defines probable cause as: "'[i]f the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient.'" (Citation omitted.)

4. For an excellent discussion of the history of the automobile exception, see Moylan, *The Automobile Exception: What It Is and What It Is Not—A Rationale in Search of a Clearer Label*, 27 Mer.L.Rev. 987 (1976).

bers' car contained guns and fruits of the crime. The right to search and the validity of the seizure was not dependent on the right to arrest. They were based on the probable cause that the seizing officer had that the contents of the automobile included evidence or fruits of the crime.

In the present case, the officer's right to search was not dependent on the arrest, but rather upon the officer's belief that the automobile contained evidence of a crime. *Carroll* and *Chambers* justified the search of the entire car and the officer's opening and seizing the plastic bags.

▮ The officer in this case had validly stopped Lear's car. He then smelled marijuana and talcum powder as well as having the voluntary admission that the car contained "dope". The smell of marijuana *alone* can satisfy the probable cause requirement for a warrantless search. *United States v. Rumpf*, 576 F.2d 818 (10th Cir.), cert. denied, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *United States v. Bowman*, 487 F.2d 1229 (10th Cir. 1973). Thus, the aroma gave the officer probable cause to search the car, including the trunk. *State v. Sandoval*, 92 N.M. 476, 590 P.2d 175 (Ct.App.1979). The officer did not need to obtain a search warrant. The officer had probable cause to search the car immediately. "[A]utomobiles * * * may be searched without a warrant * * * *provided that there is probable cause to believe* that the car contains articles that the officers are entitled to seize." (Emphasis added.) *Chambers v. Maroney, supra* 399 U.S. at 48, 90 S.Ct. at 1979.

▮ Although there is probable cause, the second factor, exigent circumstances, must also be present. *United States v. Milhollan*, 599 F.2d 518 (3rd Cir.), cert. denied, 444 U.S. 909, 100 S.Ct. 221, 62 L.Ed.2d 144 (1979), restates the second factor as "the justification for the search must arise suddenly and unexpectedly." *Id.* at 526. The officer stopped Lear's car because of an earlier teletype that stated to be on the lookout for a car that fitted the description of Lear's car. When Lear was getting his car registration, the officer then smelled marijuana and talcum powder. Prior to this, the officer had *no* knowledge that the car may contain ·marijuana. Therefore, probable cause was satisfied by the aroma and the admission of the driver; and exigent circumstance was satisfied by this unexpected discovery and by the fact that the automobile was mobile. The officer satisfied the two requirements to the automobile exception. He could then search the *entire car* knowing that marijuana may be located somewhere in the automobile. *Chambers v. Maroney, supra; United States v. Milhollan, supra.*

▮ Capps claims that even if the officer was authorized to search the automobile *including the trunk*, he was not allowed to open the bundles or the paper sack in the trunk. This is not true; the officer could search the entire car including containers inside the car to locate marijuana. In *United States v. Milhollan, supra,*[5] Milhollan was trying to cash suspicious money orders. The teller at the bank notified an officer who approached Milhollan; Milhollan ran and was apprehended a few blocks away. A search of Milhollan produced car keys to a gold Capri. The officer found the car in a public parking lot. The officer drove the car to the police station and then searched it. A closed but unlocked satchel was found in the back seat. The officer opened the satchel and found cash and stolen money orders. Milhollan contended that the search of the car and the satchel were illegal. The Court, however, found a valid search of *both* under the *Carroll* Doctrine. The police had probable cause to search Milhollan's automobile because of their belief that there may be evidence of an attempt to pass stolen or forged money orders. The probable cause was also found to arise suddenly and unexpectedly because events surrounding the arrest triggered the officer's suspicion that the automobile contained evidence. Therefore, the search of

---

5. The United States Supreme Court denied certiorari to *United States v. Milhollan, supra,* October 9, 1979. *Arkansas v. Sanders, infra,* was decided June 20, 1979.

the automobile was valid. Relying on *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), Milhollan contended that the search of the satchel was invalid. The Court held that *Chadwick* was not applicable. In *Chadwick*, the trunk was the target of the investigation or search rather than the automobile that was carrying it.

> Here, the police had probable cause to believe that Milhollan's car, not a particular container in brief contact with Milhollan's car, contained evidence of a crime. Their suspicions were not localized; their search of the automobile was not a pretext for a search of the satchel. They only knew that somewhere in Milhollan's automobile there probably was evidence shedding light on his true identity. These facts bring this case within *Chambers* and distinguish it from *Chadwick*.

*United States v. Milhollan, supra* at 527.

In the present case, the plastic bags in the trunk were not the target of the officer's search. The officer was searching for marijuana; he did not know where it would be located. Thus, the officer is allowed to search items or containers located in the car to find the contraband as long as a specific container is not a particular target. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), are not applicable to this case. *Sanders* and *Chadwick* are "container" cases and this present case *is not* a container case.

In *Chadwick*, a suspicious footlocker thought to contain marijuana was loaded from a train to the trunk of a car. While the trunk was still open, arrests were made and the footlocker was seized. The locker was taken to a Federal Building and opened an hour and one-half after the arrests. The Supreme Court held that the warrantless search of the trunk was invalid because it was already in custody; therefore, there were no exigent circumstances.

In *Sanders*, an officer had received information that the defendant would be coming in on a flight with a green suitcase containing marijuana. At the airline baggage pick-up, the defendant picked up a green suitcase matching the description received by the officer. The green suitcase was put in a taxi's trunk, and the taxi drove away. The officer stopped the taxi a few blocks away. Upon the request of the officer, the taxi driver opened the trunk of his vehicle. The officer found the green unlocked suitcase and without asking permission, the police opened the suitcase finding marijuana. The state of Arkansas argued that *Carroll* applied, however the Court stated:

> Here, as in *Chadwick*, the officers had seized the luggage and had it exclusively within their control at the time of the search.
>
> \* \* \* \* \* \*
>
> \* \* \* Once police have seized a suitcase, as they did here, the extent of its mobility is in no way affected by the place from which it was taken. Accordingly, as a general rule there is no greater need for warrantless searches of luggage taken from automobiles than of luggage taken from other places.

*Sanders, supra* 442 U.S. at 762–64, 99 S.Ct. at 2592–93.

*Sanders*, in a footnote, explained that the seizure of a "target container" and the seizure of an automobile is quite different.

> We view, however, the seizure of a suitcase as quite different from the seizure of an automobile. In *Chambers*, if the Court had required seizure and holding of the vehicle, it would have imposed a constitutional requirement upon police departments of all sizes around the country to have available the people and equipment necessary to transport impounded automobiles to some central location until warrants could be secured. Moreover, once seized automobiles were taken from the highway the police would be responsible for providing some appropriate location where they could be kept, with due regard to the safety of the vehicles and their contents, until a magistrate ruled on the application for a warrant. Such a constitutional requirement therefore would have imposed severe,

458

even impossible, burdens on many police departments. (Citations omitted.)

*Id.* at 765, n. 14, 99 S.Ct. at 2594, n. 14. In the present case, if the officer was not allowed to search the entire automobile, he would have had to seize the automobile because he did not know where the marijuana was particularly located.

■■■ When an officer executes a search warrant, he may search thoroughly every part of the described premises *where there is any likelihood that the property sought may be found.* 1 Wharton's Criminal Procedure § 172 (12th ed. 1974). The same principle applies when a lawful search, without a warrant, is conducted pursuant to a warrant exception. If there is probable cause to search for a particular item, the officer can search every container and location within the permitted area where that item could be located.

Between the time certiorari was granted in this case and the decision, the United States Supreme Court decided *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981).[6] In deciding this case, we have fully examined *Robbins* and feel that it is not controlling.

In *Robbins,* the defendant, driving erratically, was validly stopped by a police officer. When the defendant opened the car door to show his registration, the officer smelled marijuana. The Court found that the officer had probable cause to search Robbins' car, including the trunk. In the luggage compartment of the trunk were a totebag and two packages wrapped in green opaque plastic. The police unwrapped the packages; the packages contained marijuana.

■■■ The Supreme Court analyzed *Robbins* as a *Sanders-Chadwick* container case. The Court reiterates the same language cited on page 488 of this opinion. That once the police have seized the suitcase, the extent of its mobility is no longer affected. The officer in *Robbins* must have been considered to have seized the bricks of marijua-

na. The officer here never seized the plastic bags. While the bags were in the car, he tore a hole in them. The *Sanders-Chadwick* analysis is not applicable to the present case.

We find that the opening of the plastic bags during the car search was within the extent of the automobile exception. The officer did not violate Capps' Fourth Amendment rights.

The decision of the Court of Appeals is reversed.

IT IS SO ORDERED.

PAYNE and FEDERICI, JJ., concur.

EASLEY, C. J., concurring in the result.

SOSA, Senior Justice, dissenting.

SOSA, Senior Justice, dissenting.

I respectfully dissent.

I cannot join in the majority opinion for the following reasons:

1. The United States Supreme Court has consistently held that the "automobile exception" to the warrant requirement *does not* justify the warrantless search of a closed container found inside the luggage compartment of an automobile. Yet, the majority purposely ignores the clear mandate of the United States Supreme Court in *Robbins v. California,* — U.S. —, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981); *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). *Robbins,* in particular, is indistinguishable from the case at bar and unquestionably supports a holding that the evidence herein should be suppressed. We are required to follow the United States Supreme Court decisions interpreting federal constitutional questions. *Bourguet v. Atchison, Topeka & Santa Fe Railway Co.,* 65 N.M. 207, 334 P.2d 1112 (1959); *Silva v. Crombie & Co.,* 39 N.M. 240, 44 P.2d 719 (1935). The majority opinion is a blatant

---

**6.** The United States Supreme Court has granted review of *United States v. Ross,* — U.S. —, 102 S.Ct. 386, 70 L.Ed.2d 205 (1981), and has directed the parties to address the question whether the Court should reconsider *Robbins v. California, supra.*

violation of our own mandate and overrules the above cases *sub silentio.* In fact, the United States Supreme Court rejects the argument that state courts can interpret the Fourth Amendment of the federal constitution in a more restrictive fashion than what they have. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975).

2. The majority opinion has, in effect, done away with the warrant requirement of our federal and state constitutions, stating, "If there is probable cause to search for a particular item, the officer can search every container and location within the permitted area where that item could be located."

3. The surrounding circumstances in the case at bar amounted to probable cause to search the bags. However, probable cause alone has never been sufficient to justify a warrantless search absent exigent circumstances. The State did not claim that exigent circumstances existed to search the bags. As such, the officer should have and could have obtained a search warrant.

4. The majority is negating the constitutional protections afforded all individuals simply on the basis of this particular defendant's guilt.

5. The historical dissertation regarding the "search incident to an arrest" and "automobile" exceptions to the warrant requirement is nothing more than dicta; the only issue before us on certiorari is whether the officer's warrantless search of the tri-wrapped and taped bags was unconstitutional.

I shall now elaborate on the theses of my dissent.

A more thorough discussion of the facts follows: On February 13, 1979, Officer Privetts of the Artesia Police Department stopped a car in which the defendant was a passenger.[1] The officer inquired of the driver as to the ownership of the vehicle. While the driver opened the door to reach in the glove compartment and obtain ownership papers, the officer smelled an aroma of raw marijuana. The officer then asked the driver what he had in the car. After the driver answered "nothing," the officer asked if he could look in the trunk. After hesitating for some time, the driver accompanied the officer to the rear of the vehicle. The defendant remained in the back seat of the vehicle. After placing the key in the trunk, the driver attempted to bribe the officer. The officer then ordered the driver and the defendant to keep their hands where he could see them. The officer testified that, at this point, he considered the driver and the defendant to be under arrest. After being told to keep their hands where the officer could see them, the driver told the officer: "We got no guns. We got dope, but we don't got no guns." The trunk was then opened and the aroma of raw marijuana and talcum powder became stronger. The officer observed nine dark green trash bags sealed with silver tape and a brown paper bag.[2] The officer then tore a hole in one of the trash bags so that he "could see inside of it," although he "knew what was in them." The bags were then removed from the car and put in police department evidence lockers and the car was impounded.

The trial court denied motions to suppress, and later found the defendant guilty of possession of marijuana with the intent to distribute. The Court of Appeals (Andrews, J., dissenting) reversed the trial court, holding that the warrantless search of the containers was unconstitutional. The majority now reverses the Court of Appeals.

The major flaw of the majority opinion is the majority's refusal to follow the clear mandate of the United States Supreme Court in *Arkansas, supra,* and *Robbins, supra.*

In *Arkansas,* the United States Supreme Court was presented with the issue of whether the warrantless search of the de-

---

1. On April 11, 1980, this Court denied appellee's writ of certiorari which challenged the Court of Appeals' memorandum opinion upholding the validity of this stop. (No. 13,032).

2. It is unclear by the testimony whether the brown bag was closed or open.

fendant's suitcase fell under either the *Chadwick, supra,* (search of a locked footlocker located in the trunk of an automobile is unlawful) or the *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (automobile exception cases), interpretation of the Fourth Amendment. The Court opted toward applying *Chadwick* and refused the State's insistence to extend the *Carroll/Chambers* cases to allow warrantless searches of everything found within an automobile, as well as the automobile itself. *Arkansas, supra.*

The Court unequivocally stated that their decision in *Arkansas* meant "only that a warrant generally is required before personal luggage can be searched *and that the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile.*" *Id.* 442 U.S. at 765 n. 13, 99 S.Ct. at 2594 n. 13 (emphasis added).

Again, on January 19, 1981, the United States Supreme Court granted certiorari in *Robbins v. California, supra,* because of the continuing uncertainty as to whether closed containers found during a lawful warrantless search of an automobile may, themselves, be searched without a warrant. The Court in *Robbins* recognized that "[i]n recent years, we have twice been confronted with the suggestion that this 'automobile exception' somehow justifies the warrantless search of a closed container found inside an automobile." *Id.* at 2844–45. The Court then acknowledged that, in *Arkansas, supra,* and *Chadwick, supra,* the Court had refused to accept the suggestion. The Court stated: "Those cases [*Arkansas* and *Chadwick*] made clear, if it was not clear before, that a closed piece of luggage found in a lawfully searched car is constitutionally

protected to the same extent as are closed pieces of luggage found anywhere else." *Id.* at 2845.

The Court then proceeded to analyze the facts in *Robbins* (which are indistinguishable from our case) and concluded:

> Although the two bricks of marihuana were discovered during a lawful search of the petitioner's car, they were inside a *closed, opaque container. We affirm today that such a container may not be opened without a warrant, even if it is found during the course of the lawful search of an automobile.* [Emphasis added.]

*Id.* at 2847.

Thus, as late as July 1, 1981, the United States Supreme Court has ruled that the "automobile exception" to the warrant requirement DOES NOT justify a warrantless search of the containers located in the luggage compartment of an automobile. We are required by law to follow the precedent set by the United States Supreme Court. *Bourguet, supra; Silva, supra.* Yet, the majority takes the same theory which has been consistently rejected by the United States Supreme Court and attempts to justify the search in this case. The majority opts toward citing a single federal court decision, *United States v. Milhollan,* 599 F.2d 518 (3d Cir. 1979), which was decided three months before *Arkansas, supra,* and which is *not* on point,[3] to justify their position, although the United States Supreme Court subsequently decided *Robbins, supra,* which is directly on point with our case.

In *Robbins,* after a valid stop, the police officer found roaches, tweezers, marijuana seeds and a plastic baggie containing marijuana in the passenger compartment of the defendant's car. While searching the passenger compartment, Robbins told the officer, "What you are looking for is in the

---

**3.** The target theory espoused in the *Milhollan* case supports a holding suppressing the evidence in this case. The court therein held that the satchel which was found in the passenger compartment of the automobile was not a target of the search since the police had no "inkling" that the satchel, by itself, contained relevant evidence. In this case, the officer had an "inkling" (*vague* notion) of what was in the sealed bags. Thus, absent exigent circumstances, the officer should have obtained a search warrant from a neutral and detached judge.

back." The officer then opened the luggage compartment of the car and found several containers and unwrapped them. The containers were described as being wrapped or boxed in an opaque material sealed on the outside with a strip of opaque tape. The containers resembled oversized cigar boxes. The Court reaffirmed that *"such a container may not be opened without a warrant, even if it is found during the course of the lawful search of an automobile."* (Emphasis added.) *Id.* at 2847.

The Court rejected the California Court of Appeals' reasoning that "[a]ny experienced observer could have inferred from the appearance of the packages that they contained bricks of marijuana." *People v. Robbins,* 103 Cal.App.3d 34, 40, 162 Cal. Rptr. 780, 783 (1980). We, too, should not rely on the experience of the officer. The United States Supreme Court's rationale in *Robbins* was twofold. One, the officer's vague testimony (not inexperience) failed to establish that the packages could only contain marijuana. Two, the configuration of the packages failed to establish that they could only contain marijuana. To that end, the Court stated:

> Expectations of privacy are established by general social norms, and to fall within the second exception of [footnote 13 in *Arkansas, infra*] a container must so clearly announce its contents, whether by its distinctive configuration, its transparency, or otherwise, *that its contents are obvious to an observer.* If indeed a green plastic wrapping reliably indicates that a package could only contain marihuana, that fact was not shown by the evidence of record in this case.[2] [Emphasis added.]

*Robbins v. California,* 101 S.Ct. at 2847. The Court, in footnote 2, noted that Judge Rattigan wrote in his dissenting opinion that the containers could have been books, canned goods or any number of other innocuous items, and that, in fact, the containers resembled a carton of emergency highway flares that he carried in his trunk.

In the case at bar, the facts reveal that defendant has an even stronger factual basis to support a reasonable expectation of privacy under *Robbins, supra.* After the trunk of the car was opened, Officer Privetts testified that he saw nine bundles or packages wrapped in dark green plastic trash bags completely sealed with an opaque tape. In fact, each bundle was triple wrapped and taped with an opaque tape. When asked to describe the bags, the officer answered:

> They were (pause) a standard trash bag (indicating) like they use for packaging marijuana. It's a plastic trash bag. I don't know how to explain it to you.

The district judge then asked the officer to give an approximate height, width and depth of the bags, to which the officer responded:

> They were taped up. The packages were approximately twenty-four inches by twenty-four inches by twelve inches thick.

The officer then proceeded to testify that, in his experience, that was a common method of packaging marijuana. Yet, no definite configuration was given of the containers. In fact, the officer testified that he could not describe the bags.

Admittedly, not all containers are deserving of Fourth Amendment protection. This was stated by the United States Supreme Court in footnote 13 of *Arkansas, supra.*

> Footnote 13 provides in pertinent part:
> Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view," thereby obviating the need for a warrant. [Citation omitted.]

*Id.* 442 U.S. at 764–65, 99 S.Ct. at 2593.

The Court in *Robbins, supra,* after quoting the footnote, explained its meaning by stating:

The second of these exceptions obviously refers to items in a container that is not closed. The first exception is likewise little more than another variation of the "plain view" exception, since, if the distinctive configuration of a container proclaims its contents, the contents cannot fairly be said to have been removed from a searching officer's view. The same would be true, of course, if the container were transparent, or otherwise clearly revealed its contents.

*Id.* at 2846.

What *Robbins* holds is that the "distinctive configuration" or "transparency" of a container must clearly announce the contents of the container for it to be in plain view. In *Robbins*, a brick-shaped container wrapped in opaque plastic did not clearly announce that the container only had marijuana. In the case at bar, the officer's vague testimony as to the configuration of the containers does not establish that the bags could only contain marijuana. As the district judge noted for the record, the type of bag in the case at bar, wrapped the way it was, is like a trash bag or paper bag he uses to carry laundry in his trunk. The officer also testified that the bags could be used for any number of other purposes.

In addition, the United States Supreme Court, for purposes of the *Arkansas, supra,* analysis, attached no significance to the fact that Robbins told the officer that what he was looking for was in the back of his car. Nor should we attach any significance to the driver's statement that they had dope.

In my judgment, *Robbins* is controlling and supports the reasonable expectation of privacy the defendant has in these tri-wrapped and sealed containers. The officer should have proceeded to obtain a search warrant. The fact that the containers were in an automobile does not justify a search of the containers absent exigent circumstances. The State does not allege that there were exigent circumstances to search the bags.

The majority, however, citing *Milhollan, supra,* persist in arguing that, since the automobile was mobile and the discovery of the bags was unexpected, there were exigent circumstances to justify application of the automobile exception to the warrant requirement. I disagree with this argument.

The United States Supreme Court has delineated what constitutes an "exigency" for searching closed, opaque containers found during the lawful warrantless search of an automobile. In *Arkansas, supra,* at footnote 11, the Court acknowledged that certain special exigencies would justify the warrantless search of a suitcase and cited *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), where the police had reason to believe that the automobile contained a weapon. The Court then went on to state that "such exigencies will depend upon the probable contents of the luggage and the suspect's access to those contents—not upon whether the luggage is taken from an automobile." *Arkansas* 442 U.S. at 763, n. 11, 99 S.Ct. 2593, n. 11. Thus, where police officers, without endangering themselves or risking loss of the evidence, lawfully detain a person suspected of criminal activity and secure the containers in the suspect's automobile, the officers should delay the search of the containers until having obtained judicial approval to do so. *Id.*

Albeit, the majority states that, since Officer Privetts did not seize the bags, he could search them. This is nothing more than sophistry. The majority tells all police officers that they can rummage through all containers located in an automobile undergoing a lawful warrantless search, so long as they do not "seize" the containers. The rationale of the majority is that the automobile is "mobile." This is wrong. The only question is whether the officer should have taken the bags along with the defendants to the police station and then should have obtained a warrant to search the bags, rather than immediately searching the bags without a warrant. Both *Robbins, supra,* and *Arkansas, supra,* hold that the former must be done. While automobiles, and containers therein, may both be mobile, con-

tainers, themselves, may be brought and kept under the control of the police. *Robbins.*

The officer, in the case at bar, should have followed appropriate police procedures and should have obtained a search warrant. The bags were in the exclusive control of the Artesia Police Department from the moment of arrest, and Officer Privetts had no reason to believe that the bags contained any items which may have been inherently dangerous to him. In fact, the driver dispelled the officer of any concern of danger. To require Officer Privetts to impound the sealed bags and obtain a warrant to search the bags' contents creates no great hardship. The officer, defendants and the bags were all headed to the police station immediately following the arrest and unlawful search. When weighed against the deprivation of constitutional guarantees, such a requirement of obtaining a warrant from a neutral magistrate is a minimal hardship. In my judgment, the officer had probable cause but no exigent circumstances. If probable cause dispensed with the necessity of a warrant, as the majority states, then one would never be required. The mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required by our constitutions. *Arkansas, supra.* An illegal search cannot be justified by what it uncovers. *See Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

Furthermore, although the New Mexico Legislature and other political bodies have made the "exclusionary rule" a target for a deathblow, that should be of no significance to the disposition of this case. We are not to decide these cases on the basis of what may be popular in the communities of our nation; we *must* decide these cases on their constitutional merit.

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), guarantees to all citizens "[t]he right * * * to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." U.S.Const.amend. IV. No doubt, when examining a Fourth Amendment issue, courts have an arduous duty of determining how much protection to afford an individual citizen without unduly hampering the efforts of police to maintain peace and order. What is involved is the merits of individual rights versus the security of the remainder of the community. However, unless courts protect against infringement of individual rights, it is the community which must ultimately suffer; to protect the innocent from unreasonable invasions, courts must enforce the constitutional rights of the accused.

The United States Supreme Court has unhesitatingly asserted that the right of privacy and personal security protected by the Fourth Amendment are to be regarded as of the very essence of constitutional liberty. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Thus, searches for evidence of crime demand the greatest, not the least, restraint upon an officer's intrusion into privacy. *Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). The exclusionary rule is required not only in hope of deterring unconstitutional searches, but it is also required to vindicate the right of privacy guaranteed *all* individuals by the Fourth Amendment. *Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971) (Brennan, J., concurring opinion).

There exist countless cases on record in which officers, either from their over-zealous efforts to enforce the law or solve a crime, or because of their particular dislike of members of a certain minority group, commit acts which violate our constitution. For example, in *State v. Sero,* 82 N.M. 17, 474 P.2d 503 (Ct.App.1970), the Court of Appeals stated that, since nothing had been seized as a result of the unlawful rummaging through drawers of the defendant, no issue as to the exclusion of improperly-seized evidence was before them. In fact, in the case at bar, the officer admitted under oath that it is his standard practice to speak with defendants, knowing they have an attorney but without checking with the

attorney, to investigate further the matter in question. This is contrary to a defendant's Sixth Amendment right to counsel.

I intend these examples simply as illustrations that courts must continually enforce constitutional rights as a reminder that such fundamental rights are not to be violated. Once we commence lowering the barriers of constitutional protections because of a particular defendant's guilt, then we lower the barriers for all, and for the countless number of people who may be unduly harassed by officers from whom we never hear because of their innocence, and because they chose to endure the harassment rather than speak up.

For the foregoing reasons and, more particularly, because we are mandated to follow the United States Supreme Court rather than reverse it *sub silentio*, I respectfully dissent.